William KONSTANTINAKOS, Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE COR-
PORATION, C. William Wester, Robert
F. Fredo, Jr., Donald J. Anderson,
Thomas F. Bagley, Walter E. Bennett,
Robert B. Bowen, Gerald J. Crowley,
Ernest N. Daulton, Jr., Robert E. Fitz-
gerald, Donald G. Hicks, Thomas J.
Judy, Robert C. Keogh, Ralph Lolli, Jr.,
Gerard R. Martel, J. Parker Rice, Jr.,
Lester H. Rome, Eugene L. Sorbo, An-
thony F.S. Whitton, Individually and as
Directors and Officers of First Service
Bank for Savings, Robert P. George,
Charles W. Morgan, individually and as
Trustees of The 200 Woodbury Realty
Trust, and as Grantors of The WHFS
Realty Trust, Defendants.

Civ. A. No. 88–2144–T.

United States District Court,
D. Massachusetts.

Aug. 8, 1989.

Reginald L. Marden, P.C., Andover, Mass., for plaintiff.

William J. Patton, Robert J. Stillman, David Martland, Ropes & Gray, Boston, Mass., for Federal Deposit Ins. Corp.

John H. Henn, Brandon F. White, Foley, Hoag & Eliot, Boston, Mass., for First Service Bank for Savings.

Thomas E. Dwyer, Jr., Jody L. Newman, William Kettlewel, Dwyer & Collora, Boston, Mass., for Robert F. Fredo, Jr.

Evan Slavit, Fine & Ambrogne, Boston, Mass., for William H. Wester.

## MEMORANDUM

TAURO, District Judge.

This lawsuit is the second in a series of cases filed in this court following the discovery by federal and state banking authorities of financial irregularities at the First Service Bank for Savings.[1] Plaintiff is a shareholder who purchased the bank's stock sometime during 1987. The defendants fit into five categories: 1) the Feder-

---

1. The other cases pending in this court are: *Hurley, et al. v. FDIC, et al.,* 719 F.Supp. 27; and *Loan, et al. v. FDIC, et al.,* D.C., 717 F.Supp. 964. The following related cases are all pending in the courts of the Commonwealth: *Ashey, et al. v. First Service Bank for Savings,* CA No. 89–349 (Worcester Superior Court); *Feehan v. W.N. Investors Inc.,* CA No. 71844 (Fitchburg District Court); *First Service Bank for Savings v. Little, et al.,* CA No. 88–2303 (Worcester Superior Court); *First Service Bank for Savings v. Wester,* *et al.,* CA No. 88–2292 (Worcester Superior Court); *Fredo, v. First Service Bank for Savings,* CA No. 88–3053 (Worcester Superior Court); *Mason v. Goutzos,* CA No. 88–7088C (Suffolk Superior Court); *Pelletier v. First Service Bank for Savings, et al.,* CA No. 89–0774 (Worcester Superior Court); *Tiernan, et al. v. Little, et al.,* CA No. 89–0657 (Worcester Superior Court); and *Zocco v. First Service Bank for Savings,* CA No. 88–3188 (Worcester Superior Court).

al Deposit Insurance Corporation;[2] 2) C. William Wester, the bank's former President, Chief Executive Officer and Chairman of the bank's board of directors; 3) Robert F. Fredo, Jr., the bank's former Senior Vice President and Senior Lending Officer; 4) Robert P. George and Charles W. Morgan, business associates of Wester and Fredo and customers of the bank; and 5) members of the bank's board of directors.

The complaint alleges that several of the bank's public statements and periodic reports to shareholders and the FDIC contained material misrepresentations and failed to disclose numerous bad lending practices and poor quality loans. Count I charges the defendants with violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, 17 C.F.R. § 240.10b–5. Count II alleges that the FDIC, Wester, Fredo and the directors violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a)–(c), and that George and Morgan conspired to violate RICO, 18 U.S.C. § 1962(d). Counts III–VII allege various state law claims against several of the defendants.[3] Count VIII alleges that Wester, Fredo and the board of directors violated 12 C.F.R. § 215.4(b)(1) by extending excessive credit to Wester and Fredo without prior approval by the board of directors. All the defendants have filed motions to dismiss. Plaintiff's federal claims are addressed *seriatim.*

### I.

Defendants contend that plaintiff lacks standing to bring his securities claim. Alternatively, defendants argue that the complaint fails to plead the alleged securities fraud with particularity.

---

**2.** Originally the bank was a defendant in this action. On March 31, 1989 the Massachusetts Commissioner of Banks took the bank over and appointed the FDIC to act as its liquidator. Subsequently, this court allowed the FDIC's motion to be substituted for the bank as a defendant. The FDIC, therefore, stands in the shoes of the bank in this litigation.

**3.** Count III charges all the defendants with common law fraud. Count IV charges Wester, Fre-

#### A. The "in connection with" requirement

Section 10(b) of the 1934 Securities Exchange Act makes it unlawful for "any person [t]o use or employ, in connection with the purchase or sale of any security, ... any manipulative or deceptive device" that violates SEC rules. 15 U.S.C. § 78j(b). Rule 10b–5 gives meaning to this prohibition. It makes it illegal "for any person ... to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made ... not misleading ... in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5.

For a misrepresentation or omission to be actionable under § 10(b) and Rule 10b–5, the challenged statement must have been made "in connection with the purchase or sale of ... [a] security." 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–6. The Supreme Court has interpreted the "in connection with" language to require an actual purchase or sale of a security that is connected with a challenged statement. *See Blue Chip Stamps v. Manor Drug Store,* 421 U.S. 723, 737–38, 95 S.Ct. 1917, 1926–27, 44 L.Ed.2d 539 (1975). Where a misrepresentation or omission causes a person to retain shares previously purchased, rather than purchase new shares or sell already owned ones, the shareholder does not have standing to bring a 10b–5 claim. *Id.*

Plaintiff alleges that he bought stock "[o]ver the course of 1987." *Complaint* ¶ 1. More particularly, it appears that plaintiff purchased his shares at various unspecified dates between June 1987 and December 1987. *See id.* at ¶¶ 1 and

do and the board of directors with negligence. Count V charges Wester, Fredo and the board of directors with breach of their fiduciary duty of care, in violation of M.G.L. ch. 156B, § 65. Count VI charges Wester and Fredo with receiving loans or credit from the bank in violation of M.G.L. ch. 168, § 19. Count VII charges Wester, Fredo and the board of directors with approving excessive loans to a single borrower in violation of M.G.L. ch. 167E, § 14.

**38**

50.[4] Notwithstanding these dates, the complaint references statements issued by the bank throughout 1988. *See id.* at ¶¶ 54, 56 and 59–63. Clearly, none of the 1988 statements are actionable by this plaintiff. There is no way that the 1988 statements can be said to have been made "in connection with the purchase or sale of ... [a] security" in 1987. 17 C.F.R. § 240.10b–5. *See also Blue Chip Stamps,* 421 U.S. at 737–38, 95 S.Ct. at 1926.

■ The remaining statements that plaintiff challenges were made in September and October of 1987. *See Complaint* ¶¶ 57–58. The complaint's allegation that plaintiff bought shares at several unspecified dates between June and December of 1987 is insufficient to satisfy the "in connection with requirement," because neither the court nor the defendants have any way of knowing whether the purchases had ceased prior to release of the bank's statements.

*B. Pleading Fraud with Particularity*

The Federal Rules of Civil Procedure require "the circumstances constituting fraud ... [to] be stated with particularity." Fed.R.Civ.P. 9(b). To satisfy the rule, a pleading must "specif[y] ... the time, place and content of ... [each] alleged false representation." *McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 229 (1st Cir. 1980). The purpose of the rule is to give notice of plaintiff's claim of fraud and to inform each individual defendant of what role he is alleged to have played in the fraud. *Id. See also Margaret Hall Foundation v. Atlantic Financial Management, Inc.,* 572 F.Supp. 1475, 1481 (D.Mass.1983) (Tauro, J.) (fraud complaint

must notify each defendant of what he is alleged to have done). The rule is especially important in securities fraud cases where the strike suit value of a complaint is high. *See Wayne Investment, Inc. v. Gulf Oil Co.,* 739 F.2d 11, 13–14 (1st Cir. 1984). *See also Blue Chip Stamps v. Manor Drug Store,* 421 U.S. 723, 741, 95 S.Ct. 1917, 1928, 44 L.Ed.2d 539 (1975) (referring to the "*in terrorem*" effect of a securities fraud allegation on settlement).

■ As already noted, the complaint does not adequately identify which of the allegedly misleading statements were made "in connection with the purchase or sale of ... [a] security." 17 C.F.R. § 240.10b–5. The defendants, therefore, do not know which statements they must prepare to defend themselves against, and which statements were included in the complaint as background or surplusage.

■ Perhaps even more significantly, the complaint does not explain what was misleading about any of the challenged statements.[5] The complaint catalogues several lending transactions, and alleges that they should have been disclosed. But Rule 10b–5 does not require disclosure of every fact of corporate existence. The rule only requires disclosure of "material fact[s] [that are] necessary to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5. Nowhere does the complaint explain how the failure to disclose the requested information made the challenged statements misleading.[6] Without including that information in the

---

4. Paragraph 50 of the complaint alleges that the shares were purchased "[b]etween June of 1982 and December of 1987." *Complaint* ¶ 50. The bank did not issue shares until July 1987. Thus, it was impossible for plaintiff to have purchased any shares in 1982. In order to make paragraphs 1 and 50 consistent, this court reads "June of 1982" as if it said "June of 1987".

5. Although Rule 10b–5 makes both misrepresentations and omissions actionable, the complaint does not specify a single misrepresentation. Rather, it is plead based on a failure to disclose material facts. *See Complaint* ¶ 66.

6. The fact that another complaint filed in a related case explains why many of the same omissions challenged in this case are misleading does not help this plaintiff. *See Hurley, et al. v. FDIC, et al.,* 719 F.Supp. 27 (First Amended Complaint). Each complaint must stand or fall on what is contained within its own four corners. To hold otherwise would circumvent Rules 8 and 9 which require the complaint to provide notice of a plaintiff's claim and to particularize all allegations of fraud. *See* Fed.R. Civ.P. 8, 9(b).

complaint, there can be no liability under Rule 10b–5.[7]

■ In addition to failing to particularize the details of plaintiff's securities fraud claim, the complaint provides no details to any of the individual defendants, with the exception of Wester, as to what role they are alleged to have played in the fraud. *See Margaret Hall Foundation*, 572 F.Supp. at 1481 (each defendants' role in the fraud must be particularized). Only the FDIC, standing in the shoes of the bank, and Wester, as the bank's president, are alleged to have participated in making the challenged statements.[8] Accordingly, the other defendants appear to have been sued because of their status as officers, directors and customers of the bank rather than for any direct participation in making the false or misleading statements. The status of Fredo, the bank's board of directors and Morgan and George, respectively as officers, directors and customers of the bank is insufficient to support plaintiff's securities fraud claim. *See Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 119–20 (2d Cir.1982).

## II.

Count II alleges that all the defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.

§ 1962. The complaint does little more than track the statutory language. Indeed, it is difficult to determine which of the defendants is charged with a substantive RICO violation and which of the defendants are charged with conspiring to violate RICO. It appears that the FDIC, Wester, Fredo and the board of directors are charged with substantive violations of 18 U.S.C. § 1962(b)–(c)[9] while Morgan and George are charged only with a conspiracy to violate RICO, 18 U.S.C. § 1962(d). *See Complaint* ¶¶ 84, 86 and 88.

All RICO violations require the existence of an enterprise that is involved in interstate or foreign commerce. 18 U.S.C. § 1962. And that enterprise must be affected in some prohibited way by a pattern of racketeering activity. *Id.* To constitute a pattern of racketeering activity, there must be two or more acts of racketeering within a specific period of time. 18 U.S.C. § 1961. Section 1961(1) contains a list of racketeering acts, including mail, wire and securities fraud, that may serve as predicates for a RICO violation.

Defendants argue that plaintiff's RICO claim should be dismissed for failure to adequately plead the existence of two racketeering acts.[10] The complaint relies on allegations of mail, wire and securities fraud to provide the necessary acts of racketeering activity.

**7.** Not only does the complaint's failure to describe how the challenged statements are misleading cause it to run afoul of Rule 9(b), this same defect deprives plaintiff of standing to maintain this action. Absent details of specific misrepresentations or omissions of material facts which were required to be disclosed, plaintiff's complaint does no more than state a claim for corporate mismanagement. And it is axiomatic that the federal securities laws do not provide a cause of action for corporate mismanagement. *See Sante Fe Industries, Inc. v. Green*, 430 U.S. 462, 477–80, 97 S.Ct. 1292, 1302–05, 51 L.Ed.2d 480 (1977).

**8.** Plaintiff's attempt to impose liability on "[t]he individual defendants," presumably excluding Morgan and George, based on their signatures on the bank's 1987 Annual Report and 1987 annual SEC 10–K and 10–Q reports is unavailing. *See Complaint* ¶ 77. *Cf. Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir. 1987) (Rule 9(b)'s particularity requirement is satisfied where directors are alleged to have

signed the allegedly false corporate statements). These reports were not issued until 1988 and, therefore, cannot satisfy the "in connection with" requirement of a securities fraud claim.

**9.** Count II also alleges a violation of 18 U.S.C. § 1962(a). That subsection makes it illegal for any person "to use or invest ... any part of ... [racketeering] income ... in acquir[ing] ... establish[ing] or operat[ing] [a covered] enterprise." 18 U.S.C. § 1962(a). Although the complaint makes a reference to § 1962(a), it does not allege that any of the defendants used racketeering income in a manner prohibited by § 1962(a). Accordingly, the complaint fails to state a claim under that subsection.

**10.** Defendants also maintain that the complaint should be dismissed for failure to identify an affected enterprise. Although the complaint is inartfully phrased, paragraph 86 does identify the bank as an enterprise engaged in interstate commerce. *See Complaint* ¶ 86. This satisfies RICO's enterprise requirement.

It is elementary that a RICO claim will not be sustained unless all the elements of the racketeering acts are adequately plead. And where the racketeering acts enumerated in the complaint involve fraud, the circumstances of the fraud must be particularized. *See* Fed.R.Civ.P. 9(b); *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 290 (1st Cir.1987) (Rule 9(b)'s particularity requirement applies to wire, mail and securities fraud alleged as predicate acts of a RICO claim.).

The same pleading defects that stymied plaintiff's attempt to state a cognizable securities fraud claim in count I negate his attempt to do so as part of his RICO claim. Count I failed to satisfy the requirement that a misrepresentation or omission be in connection with the purchase or sale of securities. *See supra* at 37–38. Additionally, that count failed to specify what was misleading about the challenged statements and to particularize what role each defendant, with the exception of the FDIC, standing in the shoes of the bank, and Wester, are alleged to have played in the fraud. *See supra* at 38–39.

The only additional allegation contained in count II regarding the securities fraud is the statement that defendants "committed a fraud in the sale of securities." *See Complaint* ¶ 83. This conclusion does nothing to cure the defects identified earlier.

■ The only allegation relating to the mail and wire fraud acts of racketeering is contained in paragraph 83. That paragraph provides:

> In executing and attempting to execute their schemes to defraud the Plaintiff as to The Bank's financial condition and for personal financial gain, the Defendant Bank, Board of Directors, Wester and Fredo used the means of interstate commerce and the mails and interstate wire services to disseminate false information and information containing material omissions, in violation of 18 U.S.C. Sections 1341 [relating to mail fraud] and 1343 [relating to wire fraud].

*Complaint* ¶ 83.

The First Circuit has instructed the district courts to conduct a two part inquiry before dismissing a RICO claim for failure to particularize allegations of mail or wire fraud. *See New England Data Service, Inc. v. Becher*, 829 F.2d 286, 290–91 (1st Cir.1987). Initially, the court must determine whether the complaint satisfies Rule 9(b) by adequately specifying the time, place and content of the mail and wire fraud allegations. If it does, the inquiry ends and the complaint is sustained. But if the dictates of Rule 9(b) are not satisfied, the court must decide whether or not to provide the plaintiff with limited discovery and a chance to amend the complaint to supply the missing details. *See id.*

Plaintiff's complaint provides no details about the alleged acts of mail and wire fraud. Rule 9(b)'s "time, place and content" requirements, therefore, have not been met by plaintiff's initial pleading. *See McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 229 (1st Cir.1980) (detailing Rule 9(b)'s requirements).

■ In deciding whether to allow a plaintiff limited discovery to provide the details necessary to support his RICO claim's mail and wire fraud allegations, a court must consider the remainder of the pleadings in light of Rule 9(b)'s purposes. *See Becher*, 829 F.2d at 291–92. The court must try to "avoid[ ] groundless claims and strike suits, [limit] the potential damage to a defendant's reputation ... and ensur[e] that defendants have been adequately put on notice [of plaintiff's fraud claims] to enable them to give meaningful responses." *Id.* at 292.

■ Allowing limited discovery in this case would not serve the purposes of Rule 9(b). *Becher* intended to permit plaintiffs limited discovery only to provide "the details of just when and where the mail or wires were used." *Id.* at 290. A plaintiff is not relieved of his obligation to inform the defendants of the nature of the fraud alleged, and to do so in his initial complaint.

The mail and wire fraud acts contained in plaintiff's complaint are all alleged to relate to the dissemination of material misrepresentations and omissions. *See Com-*

*plaint* ¶ 83. But plaintiff's complaint does not particularize the misrepresentations or omissions which form the basis for the mail and wire fraud allegations.

While *Becher* would entitle plaintiff to additional time to particularize the fraudulent communications, it does not afford him an opportunity to provide the necessary specifics about the underlying basis for the mail and wire fraud claims—namely, details about the alleged material misrepresentations and omissions. Plaintiff's failure to provide any details about the alleged securities fraud, therefore, is fatal to his RICO claim.

### III.

■■ Plaintiff's final federal claim alleges that Wester, Fredo and the bank's board of directors violated a Federal Reserve Board ("FRB") regulation which limits the amount of money a bank can lend to its executive officers or directors. *See* 12 C.F.R. § 215.4(b)(1). The regulation prohibits a bank from "extend[ing] credit to any of its executive officers ... or to any related interest of that person, in an amount that ... exceeds $500,000" without prior approval by the bank's board of directors. *Id.*

There is no question that Wester and Fredo are executive officers of the bank. *See* 12 C.F.R. § 215.2(d) (defining executive officer as including, *inter alia,* the chairman of the board, the president and every vice president of a bank). The complaint does not allege that the bank made any loans directly to Wester and Fredo. Rather, the complaint relies on several million dollars in loans that the bank made to various ventures associated directly with George and Morgan, and indirectly to Wester and Fredo because of their business relationship with George and Morgan. *See Complaint* ¶¶ 32–35. The crucial question, therefore, is whether these loans constituted loans to a related interest of an executive officer.

The regulations define "related interest" as "a company that is controlled by a [cov-

ered] person." 12 C.F.R. § 215.2(k). A person can control a company in several ways, either individually or acting in concert with others. Anyone who has the power to vote 25% or more of a single class of the company's voting stock is in control of the company. 12 C.F.R. § 215.2(b)(1)(i). A person with less than a 25% vote may control the company if he can elect a majority of the company's directors. 12 C.F.R. § 215.2(b)(1)(ii). Alternatively, a person is in control of a company if he "[h]as the power to exercise a controlling influence over the management or policies of the company." 12 C.F.R. § 215.2(b)(1)(iii). Additionally, a rebuttable presumption of control exists in certain circumstances where the person owns at least 10% of any class of a company's voting securities. 12 C.F.R. § 215.2(b)(2).

According to the complaint, the bank loaned $2.3 million to a real estate trust administered by defendants George and Morgan. As compensation for arranging the loan, Wester and Fredo were allegedly given a percentage interest in a separate condominium project also connected with George and Morgan. Additionally, Wester and Fredo were released from personal guarantees they had given on loans made to the condominium project. *See Complaint* ¶¶ 32–34. Finally, the complaint alleges that the bank lent an additional $975,000 to three other ventures associated with George and Morgan. *Id.* at ¶ 35.

The fatal flaw in plaintiff's complaint is that it never links Wester and Fredo to any controlling position in any of the George and Morgan ventures which were loan recipients. The only company in which Wester and Fredo are alleged to have an ownership interest is a condominium project that was not even a customer of the bank.[11]

Looking at all of George and Morgan's ventures individually or collectively, there is no basis for concluding that Wester and Fredo owned enough voting shares to make them controlling persons. *See* 12 C.F.R. §§ 215.2(b)(1)(i)–(ii), 215.2(b)(2). Nor is

---

**11.** Even here, the complaint fails to detail the nature of Wester and Fredo's interest in the project. All the court is told is that they were

given an unidentified percentage interest. *Complaint* ¶ 33.

there a basis for concluding that Wester and Fredo had the power to exercise any "influence over the management or policies" of any of the companies, let alone a "controlling interest." *See* 12 C.F.R. § 215.2(b)(1)(iii).

The complaint fails to allege that Wester and Fredo exercised control over any company that borrowed money from the bank. The claim that the bank lent an excessive amount of money to executive officers or their related interests, therefore, is not supported by the facts contained in plaintiff's complaint.

### IV.

All that remains in this case are a series of claims predicated on the common law and statutes of the Commonwealth of Massachusetts. *See supra* at n. 3. This court has pendent subject matter jurisdiction over these claims. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). This jurisdiction, which is based on "considerations of judicial economy, convenience and fairness to litigants" is discretionary, and need not be exercised by a court where it would be imprudent to do so. *Id.* at 726, 86 S.Ct. at 1139. Ordinarily, where all "the federal claims are dismissed before trial" as has occurred in this case, the Supreme Court has indicated that "the state claims should be dismissed as well." *Id.* Accordingly, plaintiff's state law claims (counts III–VII) are dismissed for lack of subject matter jurisdiction.

An order will issue.

### ORDER

For the reasons set forth in the accompanying memorandum, defendants' motions to dismiss counts I, II and VIII of the complaint, pursuant to Fed.R.Civ.P. 12(b)(6), and counts III–VII of the complaint, pursuant to Fed.R.Civ.P. 12(b)(1), are hereby allowed.

IT IS SO ORDERED.