Richard G. BOYLE, Plaintiff,

v.

MERRIMACK BANCORP, INC.; Peter Hollingworth; Francis G. McDougal, Jr.; Harold E. Clayton, Jr.; Neil M. Blume; Victor F. Clark; David J. Fenton, Defendants.

Civ. A. No. 90–11260–Y.

United States District Court,
D. Massachusetts.

Feb. 5, 1991.

Glen DeValerio, Berman, DeValerio & Pease, Boston, Mass., for plaintiff.

Paula M. Bagger, Kenneth A. Cohen, Martin P. Honigberg, Stephen E. Neel, Goodwin, Procter & Hoar, Boston, Mass., for Merrimack Bancorp, Inc., Peter Hollingsworth, Harold E. Clayton, Jr., Neil M. Blume, Victor F. Clark and David J. Fenton.

John Howard Henn, Peter M. Casey, Foley, Hoag & Eliot, Boston, Mass., for Francis G. McDougal, Jr.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This is one of a number of securities fraud claims made against banks in the wake of the collapse of the New England real estate market. *See e.g., Loan v. First Service Bank*, 89–0251–T; *Motel v. Bank of Boston*, 89–2269–H; *Pheterson v. Bank of New England*, 89–2582–S; *Dubowski v. Bank of New England*, 89–2811–S; *Seinfeld v. Bank of New England*, 89–2855–S; *Roberts v. Bank of New England*, 89–2895–S; *Taubman v. Bank of New England*, 89–2935–S; *Joselow v. Bank of New England*, 89–2936–S; *Segal v. Bank of New England*, 89–2937–S; *Newby v. Bank of New England*, 89–2951–S; *Davidowitz v. Bank of New England*, 89–2952–S; *Stein v. Bank of New England*, 89–2953–S; *Essex v. Bank of New England*, 89–2968–S; *Katz v. Bank of New England*, 89–2969–S; *Wasserman v. Bank of New England*, 89–2978–S; *Camden Check Cashing v. Bank of New England*, 89–2991–S; *Vachon v. Baybanks, Inc.*, 90–10758–T; *Wilkes v. Heritage Bancorp, Inc.*, 90–11151–F; *Goldberg v. Bank of New England*, 90–11246–S; *Akerman v. BankWorcester Corp.*, 90–40080–S.

One of these actions has already been dismissed for failure to plead the averments of fraud with the specificity required by Fed.R.Civ.P. 9(b), *Akerman v. BankWorcester Corp.*, 751 F.Supp. 11 (D.Mass. 1990) (Skinner, J.), and another is tottering due to the same infirmity. *Wilkes v. Heritage Bancorp, Inc.*, *supra* at 9–12, 14–24, report and recommendation (D.Mass.Mag. Nov. 21, 1990) (Ponsor, M.J.).[1]

This particular complaint is brought by Richard G. Boyle ("Boyle") on behalf of himself and the class of purchasers of the stock of Merrimack Bancorp, Inc. ("Merrimack") between March 1987 and December 1989. The complaint in this case alleges securities fraud on the part of Merrimack, its officers and directors. The first claim alleges a violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5. The second claim has been voluntarily dismissed by agreement of the parties. The third claim alleges common

---

1. This snapshot of the state of this type of litigation within this District is derived from use of the Court's CHASER electronic docketing system. A computer search through the CHASER system allows the Court easily to ascertain the District-wide status of litigation under any particular case classification. A CHASER search focusing on the "securities, commodities, & exchange" civil case classification and targeting bank defendants within the past two years reveals the practical significance of the *Akerman* and *Wilkes* decisions. Counsel for the plaintiffs in *Akerman* represents the plaintiffs in ten of the other cases cited above as well. Counsel for the plaintiffs in *Wilkes* represents the plaintiff in this action as well as the plaintiffs in another similar case.

law fraud, and the fourth claim alleges negligent misrepresentation.[2]

The following facts are alleged in the complaint. Merrimack was organized under the laws of Delaware on February 11, 1987 for the purpose of holding the stock of the Lowell Institution for Savings ("Lowell"). The stockholders of Lowell approved the formation of a holding company on April 22, 1987. On October 6, 1987, Merrimack consummated its reorganization by accepting all of the outstanding stock of Lowell and in return giving Merrimack stock to the Lowell stockholders. (Complaint at ¶ 5.)

The complaint alleges that Merrimack made several public misrepresentations concerning its financial health. Specifically, the complaint alleges that portions of Merrimack's 1988 Annual Report, its December 31, 1988 Form 10K, its September 30, 1989 Form 10Q, and its 1989 Annual Report contained material misrepresentations. Carefully parsing this long and often redundant complaint, as well as its attachments, reveals the following two misrepresentations to have been specifically alleged:

1. Merrimack publicly represented that it had a formal policy for approving loans pursuant to which it checked the creditworthiness of applicants, when in reality the controls were not functioning or were being disregarded (Complaint at ¶¶ 18, 39, 41, 47[c] and [d] ); and

2. Merrimack publicly represented that it actively managed its loan portfolio by reviewing the overall portfolio against existing economic conditions in order to recognize problem loans at the earliest possible time, when in reality Merrimack failed adequately to perform such reviews and granted extensions and further credit to problem loan customers. (Complaint at ¶¶ 31, 41, 47[f] and [g].) [3]

Boyle alleges that these misrepresentations were made by the defendants knowingly and with an intent to create an inflated market price of Merrimack stock. (Complaint at ¶¶ 45, 48.) He and the other members of the class allegedly relied on the false and misleading shareholder reports directly or indirectly by trading Merrimack common stock between March 1987 and December 1989 at an artificially inflated price.[4] The class was allegedly injured when the price of the stock subsequently dropped to reflect the true financial condition of the company.

### I. Federal Rule of Civil Procedure 9(b).

Under Federal Rule of Civil Procedure 9(b), allegations of fraud must be made with particularity. The First Circuit has held that "Rule 9 requires specification of the time, place, and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir.1980). This rule is applicable to federal securities fraud claims as well as common law fraud claims. *See Wayne Investment, Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13–14 (1st Cir.1984).

The First Circuit has, however, construed the requirements of Rule 9(b) especially strictly in the securities fraud context. *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir.1987) (complaint alleged federal racketeering violation and three state law claims). Generally, "mere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement" of Rule 9(b). *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir.1985)

---

**2.** Count IV, alleging negligent misrepresentation, was dismissed against all the individual defendants by the Court at oral argument on September 7, 1990. The count remains intact as against Merrimack.

**3.** Additionally, the complaint contains other general allegations of mismanagement which are so vague as to be unactionable.

**4.** The Merrimack stock was traded at all relevant times on the NASDAQ National Market System, which the complaint alleges is a public, efficient, and national market system. (Complaint at ¶ 5).

(complaint alleged fraud and conspiracy to commit fraud). This Circuit's objective has been to prohibit a plaintiff with a largely groundless claim from pursuing extensive discovery primarily in the hopes of obtaining an increased settlement. *Wayne Investment, Inc.*, 739 F.2d at 13; *New England Data*, 829 F.2d at 288.

While interpreting Rule 9(b) strictly, the First Circuit has also noted the overlap between Rule 9 and Rule 8 and has attempted to harmonize the two. *Hayduk*, 775 F.2d at 444. In this vein, the First Circuit in *Wayne Investment*[5] stated that allegations based "upon information and belief" do not satisfy the requirements of Rule 9(b) unless they set forth the facts upon which the belief is founded, even if the supporting facts are within the knowledge of the opposing party. 739 F.2d at 13–14. In *Hayduk*, however, the First Circuit stated that "evidence and detailed facts are not required where allegations of fraud set forth the specific basis for the claim." 775 F.2d at 444.[6]

Applying these three cases to the allegations made in this complaint, the defendants argue that this complaint must be dismissed because it fails to state the factual basis of the alleged fraud. The defendants characterize the complaint as making only general allegations that Merrimack's loan losses were understated because its internal controls were not functioning and it was rolling over bad loans. Such broad charges, say defendants, are insufficient because the complaint fails to allege actual instances wherein the internal controls were not followed or specific loans were wrongfully rolled over.

The issue in this case thus focuses on how specifically a complaint must allege the *basis* for the claim and, should the requisite specificity be lacking, whether the proper course is to dismiss the complaint before the plaintiff has had an opportunity to conduct discovery.

Were this Court writing on a clean slate, I would be inclined to rule that this complaint squeaks by the dictates of Fed.R. Civ.P. 9(b) notwithstanding the similarity of the allegations here to those ruled insufficient by my colleagues in *Akerman* and *Wilkes*.[7] The allegations of fraud here, at least those identified above, are set out with reasonable particularity. Indeed, Boyle's allegations go but little beyond what can be reasonably inferred from facts which are publicly disclosed. Still, it is this little additional step that is the *sine qua non* of liability here, since only fraud, not poor management or even gross mismanagement is actionable under the securities laws allegedly violated. *See Gluck v. Agemian*, 495 F.Supp. 1209, 1213 (S.D.N.Y. 1980). But in a case such as this, absent discovery or a statement against interest by a defendant, what more can Boyle do to allege fraud here?[8]

In view of this conundrum—were this issue one of first impression—I would approach its resolution by denying the motion to dismiss and inviting the defendants to file a prompt motion for summary judgment detailing their positions with respect

---

5. In *Wayne*, the First Circuit dismissed a complaint because it failed to allege the place and content of an alleged misrepresentation and because the plaintiff "provided no factual support for its belief" that the defendant had acted fraudulently. 739 F.2d at 14.

6. In *Hayduk*, the First Circuit dismissed a complaint because it failed to allege supporting facts regarding the formation of a conspiracy, failed to allege the time, place, or supporting facts regarding an allegation that the defendant had fraudulently misrepresented facts and failed to allege what was fraudulent about the defendant's actions. 775 F.2d at 444–45.

7. *See Palandjian v. Pahlavi*, 782 F.2d 313, 314 (1st Cir.1986).

8. Though no party makes mention of it, the precise boundaries of permissible pleading, even pleading "upon information and belief," are today patrolled by Fed.R.Civ.P. 11 and the sanctions which may flow from its violation. *See Haft v. Eastland Financial Corp.*, 755 F.Supp. 1123, 1134 (D.R.I.1991) (Pettine, J.). *See generally* Note, "A Uniform Methodology For Assessing Rule 11 Sanctions: A Means to Serve the End of Conserving Public and Private Legal Resources," 60 Southern Cal.L.Rev. 1855 (1990); M. Nelken, "The impact of Federal Rule 11 on lawyers and judges in the Northern District of California," 74 Judicature 147 (1990).

to the challenged management and state of mind issues. If they cannot, the case will—indeed it ought—proceed apace. If they do, I expect the plaintiff would seek a continuance to obtain discovery pursuant to Fed.R.Civ.P. 56(f). In my judgment, this is the crucial hearing.

Such a continuance is not lightly to be granted. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 294, 298, 88 S.Ct. 1575, 1594, 1597, 20 L.Ed.2d 569 (1968); *Paul Kadair, Inc. v. Sony Corp. of America*, 694 F.2d 1017, 1028–30 (5th Cir.1983). In view of the defendants' submission, the plaintiff will have to detail precisely what discovery is sought and from whom, exactly what is hoped to be revealed, and the good faith basis for believing that such limited discovery will uncover probative evidence. If such a continuance is denied, it is likely the motion for summary judgment will be allowed and judgment will enter for the defendants. If a continuance is granted, either the motion for summary judgment will be further considered on the record thus developed or it will be waived and the case will—properly—proceed to trial.

While the transaction costs of following this procedure may be expected to be higher than the all-or-nothing approach of confronting dismissal on the basis of the complaint alone,[9] the quality of justice which results would seem to more than justify the cost. After all, instead of drawing hypothetical inferences from the bare allegations of a cold complaint, upon consideration of a motion for summary judgment, the Court will have before it actual evidentiary materials. What is more, upon a motion for a continuance under Fed.R.Civ.P. 56(f) the Court may explore the specific grounds for such action and the proposed discovery plan with particular reference to the averments brought forward in support of the defendant's motion for a summary judgment. No "fishing expedition" will be permitted, *Wayne Investment*, 739 F.2d at 14, and, if any continuance is allowed, it may be tailored by the Court to accomplish certain discrete ends within a particular time period. Such an approach will, this Court believes, afford a much more adequate record upon which to resolve, finally and justly, a pre-trial dispositive motion. By contrast, there is little judicial economy in the abrupt dismissal of a complaint which only prompts a motion for leave to amend supported by a second attempt at particularized pleading. *See Wilkes* at 24–25. In short, it seems to this Court that resolution of securities fraud claims such as this ought turn on particularized factual analysis in light of generalized legal principles rather than some hypothetical bright line of particularized pleading which, as matter of law, a plaintiff must cross in order to pry open the doors of the courthouse.

Of course, this Court is not writing on a clean slate. It's clear duty is to apply the law as already declared by the Court of Appeals for the First Circuit. And under that body of law, notwithstanding the teaching of *McGinty* that "the circumstances or evidence from which fraudulent intent [can] be inferred" need not be pleaded, it is clear from the trilogy of *Wayne Investment*, *Hayduk*, and *New England Data* that dismissal is, under appropriate circumstances, well warranted finale to an ill-pleaded securities fraud complaint. Close analysis reveals, however, that the First Circuit has, in fact, delineated a practical approach not much different from the one set out above.

---

9. If the Court takes prompt control of the case and can quickly hear and resolve a motion for summary judgment or motion for continuance under Fed.R.Civ.P. 56(f), then the transaction costs of the procedure discussed in the text will be but marginally higher than those involved in addressing a motion to dismiss. If, however, the control and timing of the procedure is allowed to lapse, for whatever reason, then either discovery will have to be stayed (a delay that unfairly burdens a plaintiff in a securities fraud case) or discovery will go forward (and unbridled discovery gives undue settlement leverage to a weak or spurious lawsuit). Indeed, it is this concern for the extraordinarily expensive nature of litigation costs that gives "strike suits" their *in terrorem* effect and appears to have led the Circuit Court to its strict scrutiny of securities fraud complaints in light of the requirements of Fed.R.Civ.P. 9(b). *Wayne Investment*, 739 F.2d at 13; *Hayduk*, 775 F.2d at 443; *New England Data*, 829 F.2d at 288–89.

Significantly, *Wayne Investment, Hayduk,* and *New England Data* each addressed the complaint at issue therein after an opportunity to consider evidence beyond the complaint itself.[10] Then, too, in none of these cases has the First Circuit affirmed dismissal of a complaint solely for failure to plead the specific basis for the plaintiff's allegation of fraud. In *Wayne Investment,* the complaint failed to allege the place and content of a press release in which the defendants allegedly made a false representation. 739 F.2d at 15. In *Hayduk* the court dismissed a complaint which failed to allege the acts in furtherance of an alleged civil conspiracy. This is a requirement of pleading any overt civil conspiracy regardless of Rule 9(b). 775 F.2d at 443, n. 1. In addition, the *Hayduk* complaint failed to meet the most basic Rule 9(b) requirements that the time, place, and content of an alleged misrepresentation be alleged. *See id.* at 444. Although these cases make reference to the need for a factual basis for an allegation of fraud, neither of them actually dismissed a complaint on this basis alone. *Compare New England Data,* 829 F.2d at 291 (1st Cir. 1987) where the First Circuit reversed the district court's dismissal of a complaint after some discovery, noting that it "seem[ed] unreasonable" not to allow even further discovery.

■ In *New England Data,* the First Circuit espoused a two part test to determine whether a complaint should be dismissed for failure to meet Rule 9(b). First, a court should determine whether Rule 9(b) has been satisfied and, second, if Rule 9(b) has not been satisfied, the court should determine whether further discovery is ap-

propriate. 829 F.2d at 290. Although the *New England Data* case dealt with a charge of racketeering rather than securities fraud, the court stated that the "degree of specificity [required in pleading a RICO mail and wire fraud claim] is no more nor less than we have required in general fraud and securities fraud cases." *Id.* at 290. The only distinguishing factor that the court made between RICO and securities fraud claims was that in the securities fraud context the First Circuit has "declined to consider ... whether the facts are peculiarly within the defendant's control," whereas in a racketeering claim the court held that it would consider this factor in determining whether to allow further discovery. *Id.* at 291. This distinction was based on the court's belief that it would be "more likely that the facts would be peculiarly within the defendant's control in the context of RICO mail and wire fraud rather than in general securities fraud." *Id.* As the *New England Data* court directly stated that it was "not distinguishing between RICO claims in general and security fraud claims," this Court holds that the two part test espoused in *New England Data* is directly applicable to securities fraud claims. *Id.* ("RICO is increasingly being used by plaintiffs as a vehicle for securities fraud actions ... and we certainly do not intend to create two bodies of law by making it easier to bring a charge of racketeering than securities fraud.")

Accordingly, this Court holds that the complaint in this case states the alleged fraudulent misrepresentations with sufficient particularity. The complaint states which public statements contained the alleged misrepresentations, when the state-

---

**10.** In *Wayne Investment* the court considered an affidavit submitted in opposition to the motion to dismiss, thereby essentially transforming the motion into one for summary judgment. 739 F.2d at 13. Similarly, in *Hayduk,* the court dismissed the plaintiff's complaint pursuant to a motion to dismiss or for summary judgment which presented data beyond the complaint itself. *Hayduk,* 775 F.2d at 442. Finally, the court in *New England Data* initially denied a motion to dismiss a RICO claim and allowed the plaintiff time to conduct limited discovery by way of interrogatories, 829 F.2d at 288, and only upon completion of the discovery did the dis-

trict court dismiss the complaint pursuant to Rule 9(b), as the plaintiff had failed to uncover the necessary information to allege fraud with particularity. *Id.* Even so, the First Circuit reversed the district court's dismissal, noting that "requiring the plaintiff to plead the time, place and contents of communications between the defendants, without allowing some discovery ... seems unreasonable." *Id.* at 291. In none of these cases has the First Circuit affirmed a summary dismissal of a complaint without assuring itself that the District Court had at least the opportunity to consider additional evidence in support of the complaint.

ments were made and the complaint contains the actual published contents of the representations. The complaint also alleges how the representations were false. (Complaint at ¶ 47). The issue here is whether the bare—and unsupported—allegations that Merrimack's internal controls were being disregarded and that Merrimack was rolling over bad loans are sufficient to comply with the mandate of Rule 9(b). Even if these conclusory allegations do not, in the full context of this complaint, meet the particularity requirement of Rule 9(b)—a point this Court does not finally decide—under *New England Data* some limited discovery ought be afforded the plaintiff before finally dismissing this complaint.

## II. Federal Rule of Civil Procedure 12(b)(6).

█ Whether or not the present complaint passes muster under Fed.R.Civ.P. 9(b), it proves fatally flawed when measured against the requirements of Fed.R. Civ.P. 12(b)(6). In *Konstantinakos v. Federal Deposit Insurance Corp.*, 719 F.Supp. 35 (D.Mass.1989), Judge Tauro considered a complaint similar to the one at hand. In that case, the complaint alleged that several of a bank's public statements and periodic reports contained material misrepresentations in violation of § 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934, the Racketeer Influenced and Corrupt Organizations Act, and various state law claims. Upon careful consideration, Judge Tauro dismissed the securities fraud claim for failure to allege fraud "in connection with" the purchase or sale of a security, as is required under § 10(b) and Rule 10b–5. 17 C.F.R. § 240.10b–5. In that case, the complaint alleged that the plaintiff bought stock "[o]ver the course of 1987." *Id.* at 37. The alleged misrepresentations were made between September and October of 1987 and throughout 1988. *Id.* at 37–38. Judge Tauro dismissed the com-

plaint holding that the allegation that the plaintiff bought the shares of bank stock at unspecified dates was insufficient to allege the "in connection with" requirement. *Id.* at 38. The court noted that "neither the court nor the defendants have any way of knowing whether the purchases had ceased prior to release of the bank's statements." *Id.*

█ In the case at hand, the complaint fails to allege any specific facts concerning Boyle's purchase of Merrimack stock. The only reference to Boyle's acquisition is in paragraph 4 which states that Boyle "purchased shares of Merrimack Bancorp, Inc. ... within the Class Period as described below." Immediately following in paragraph 5, the complaint states the circumstances surrounding the creation of Merrimack in 1987 at which time Merrimack shares were given to Lowell stockholders in return for their Lowell shares. If Boyle acquired his stock pursuant to the 1987 trade-in, he could not have relied on the alleged misrepresentations "in connection with" his purchase of Merrimack stock. The alleged misrepresentations were included in portions of the following documents: Merrimack's 1988 Annual Report; its December 31, 1988 Form 10K; its September 30, 1989 Form 10Q; and its 1989 Annual Report.[11] Clearly, these representations could not have been made during 1987.

Alternatively, if Boyle did not acquire his stock during the 1987 stock trade between Merrimack and Lowell, the complaint utterly fails to allege when Boyle acquired his stock. Since the information concerning Boyle's acquisition of the stock is entirely within his own knowledge, it is not unreasonable to require him to allege these facts. Following Judge Tauro's reasoning, Boyle has failed to allege the "in connection with" element of a § 10(b) or Rule 10b–5 violation and his individual claim

---

11. In addition to these public statements, the complaint alleges generally that between 1984 and 1987 Merrimack represented that it had formal internal controls. (Complaint at ¶ 18) These general allegations, however, do not meet

the requirements of Rule 9(b) as they totally fail to specify the time, place, or content of the alleged representations. *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226 (1st Cir.1980).

must be dismissed. *Konstantinakos*, 719 F.Supp. at 38.

 Upon dismissal of Boyle's individual claim under § 10(b) and Rule 10b–5, it is proper to dismiss the entire class action on Count I because the class has not been certified as yet and Boyle has failed to allege that he is a member of the class of purchasers who relied on misrepresentations "in connection with" the purchase of Merrimack stock. *See East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403–06, 97 S.Ct. 1891, 1896–98, 52 L.Ed.2d 453 (1977). Further, since the only remaining claims are state common law claims of fraud and negligent misrepresentation, this Court declines to exercise its discretionary pendant jurisdiction and thereby dismisses Counts III and IV for lack of subject matter jurisdiction. *See United States v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Konstantinakos*, 719 F.Supp. at 42. The Court grants the plaintiff 30 days, however, to move for leave to amend his complaint to address the concerns discussed herein.

SO ORDERED.