Walter EVANOWSKI, Jr., Plaintiff,

v.

BANKWORCESTER CORPORATION and Harold Cabot, Defendants.

Civ. A. No. 91–10162S.

United States District Court,
D. Massachusetts.

Oct. 29, 1991.

---

Glen DeValerio, Margaret G. Dobies, Melissa McKeithen Thomson, Berman, DeValerio & Pease, Boston, Mass., for plaintiff.

Nina Raginsky Mishkin, Peter Franz Neronha, Goodwin, Proctor & Hoar, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

SKINNER, District Judge.

The plaintiff, a stockholder of the defendant corporation in this action, seeks damages under federal and state securities laws and state common law for misleading and fraudulent statements and omissions which led him to purchase his stock.

*Background*

On February 16, 1990 defendant BankWorcester Corporation ("BankWorcester" or the "Bank") announced an agreement to merge with Citizens Financial Group ("Citizens"), for $22.50 per share. The an-

nouncement triggered heavy trading in BankWorcester's stock, which closed on February 16, 1990 at $18-⅜, up $2-⅝. The merger was conditioned on BankWorcester's nonperforming assets not exceeding $50 million (the "specified amount") at the time all regulatory approvals had been granted, but the agreement specified that this condition could be waived by Citizens. In the months to follow, BankWorcester's nonperforming assets continued to rise above the specified amount, reaching approximately $66 million on September 30, 1991. The increasing number of nonperforming assets was repeatedly disclosed in reports to shareholders, the Securities Exchange Commission ("SEC"), and other public announcements of financial matters.

On November 28, 1991, BankWorcester and Citizens publicly disclosed their decision to terminate the merger agreement. BankWorcester's chief executive officer Harold Cabot ("Cabot") revealed that BankWorcester and Citizens had been engaged in efforts to renegotiate the merger agreement for the prior five to six weeks. Cabot also disclosed that one of the revised offers by Citizens was in the range of $12–13.50 per share. Following these announcements, BankWorcester's stock, which had closed at $12 on November 27, 1990, fell to $6-¼ on November 28, 1990.

Between September 28, 1990 and November 28, 1990 plaintiff Evanowski claims that officers of BankWorcester made five misleading statements or omissions concerning the merger. First, on September 28, 1990, the Dow Jones News Wire Service ("Dow Jones") quoted Cabot as stating that BankWorcester was "continuing to meet with Citizens on an operational basis.... We're in constant communication with Citizens, and everything they tell us is they're anxious to get the deal done," and that "[t]he market's going to have to draw its own conclusions," with regard to whether the merger price would be renegotiated. Second, on September 29, 1990, the Telegram & Gazette ("Gazette") of Worcester, Massachusetts reported that BankWorcester's Principal Financial and Accounting Officer, Anthony J. Keller, said that "the banks were still working toward the ex-

pected merger." Third, on October 24, 1990, BankWorcester disclosed net income for the preceding third quarter at $73,000 versus a loss of $1,565,000 in the third quarter of 1989, and that the amount of non-performing assets had reached approximately $68 million. Fourth, on October 25, 1990, following BankWorcester's third quarter report, Cabot refused to respond to a media inquiry concerning the increase in the Bank's nonperforming assets. Fifth, on November 11, 1990, Cabot stated that BankWorcester's acquisition of the Home Federal Savings Bank had made the Bank "no more or no less attractive" to Citizens.

Plaintiff claims that he and a class of other shareholders who purchased or otherwise acquired the common stock of BankWorcester Corporation during the period September 28, 1990 through November 28, 1990 were damaged by the statements or omissions at issue. Plaintiff alleges damages not from the fall in the stock price on November 28, 1991, but rather from the purportedly inflated stock prices he and other potential class members paid because of their ignorance of both renegotiation discussions and the specific lower price range of those discussions, which plaintiff alleges, on information and belief, actually began as early as September 28, 1991. Plaintiff bought 3,000 shares of BankWorcester's common stock on October 2, 1990. Plaintiff has not stated what price he paid for his shares, whether he still holds his shares, or if he sold them (at what price).

Count one of plaintiff's complaint alleges that the five statements or omissions were each misleading without additional disclosures, in violation of section 10(b) and section 20 of the Securities Exchange Act of 1934 (the "Act"), as well as SEC Rule 10b–5. Counts two and three of the complaint allege that the five statements or omissions constitute fraud and negligent misrepresentation under Massachusetts law.

Defendants BankWorcester and Harold Cabot move to dismiss all three counts of plaintiff's complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) and to dismiss the claims for failure to set forth an adequate claim of fraud under Fed.

**614**

R.Civ.P. 9(b). For purposes of this motion to dismiss, all well-pleaded facts and allegations in the complaint will be assumed as true. The court may dismiss only if it appears beyond doubt that plaintiff "can prove no set of facts which would entitle him to relief." *Lessler v. Little*, 857 F.2d 866 (1st Cir.1988), *cert. denied*, 489 U.S. 1016, 109 S.Ct. 1130, 103 L.Ed.2d 192 (1989).

### Discussion

### Count One of Plaintiff's Complaint

■ A duty to disclose "does not arise from the mere possession of nonpublic market information." *Chiarella v. United States*, 445 U.S. 222, 235, 100 S.Ct. 1108, 1118, 63 L.Ed.2d 348 (1980); *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 26 (1st Cir.1987). The duty to disclose exists only (1) when a corporation makes a statement which is inaccurate, incomplete or misleading without disclosure of additional information; or (2) when a statute or regulation requires disclosure; or (3) when a corporate insider trades on confidential information. *See Backman v. Polaroid Corp.*, 910 F.2d 10, 12–13 (1st Cir.1990) (en banc); *Roeder*, 814 F.2d at 26–27. In addition, "if a disclosure is in fact misleading *when made*, and the speaker thereafter learns of this, there is a duty to correct it." *Backman*, 910 F.2d at 17 (citation omitted) (emphasis supplied). However, statements "precisely correct" when made are generally not actionable under SEC Rule 10b–5. *Id.*, at 16–18.

In *Backman*, a class of shareholders sued defendant Polaroid Corporation pursuant to Section 10(b) of the Act and Rule 10b–5, for Polaroid's failure to disclose unfavorable facts about its instant movie camera, Polavision, in connection with a 1978 third quarter report announcing record world wide sales for the firm overall. Polaroid's president reported that " 'the Company's worldwide manufacturing facilities continue to operate at close to maximum capacity,' whereas, in fact, Polavision's contract supplier ... was told, shortly before the report, to hold up on 20,000 units." *Id.*, at 15. Polaroid's president "noted also that earnings continue to reflect substantial expenses associated with Polavision," while the number of sales of Polavisions was well below the firms' expectations. *Id.*, at 16.

The First Circuit Court of Appeals, writing *en banc*, ruled that since all of the statements were "precisely correct" when made, there was no Rule 10b–5 liability. *Backman*, 910 F.2d at 17. The court held that it is not true

> that by revealing one fact about a product, one must reveal all others that, too, would be interesting, marketwise, but means only such others, if any, that are needed so that what was revealed would not be 'so incomplete as to mislead.'

*Id.*, at 16 (citing *SEC v. Texas Gulf Sulfur Co.*, 401 F.2d 833, 862 (2d Cir.1968), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969)). The court went on to conclude that, "disclosing that Polavision was being sold below cost was not misleading by reason of not saying how much below. Nor was it misleading not to report the number of sales, or that they were below expectations." *Id.*

■ In this case, plaintiff claims that all five statements or omissions of BankWorcester and its officers were misleading because there was no additional disclosure of the existence and lower price range of renegotiation discussions. In light of *Backman*, I find that the allegations of the complaint do not demonstrate that the defendants' statements were not "precisely correct" when made, nor "so incomplete as to be misleading".

Even if it is assumed for purposes of this argument that merger renegotiations began as early as September 28, the defendants' challenged statements or omissions were precisely correct. The mere existence of renegotiation discussions does not mean that BankWorcester had stopped working towards completing the merger on its original terms. Plaintiff has not alleged that, at the time any of the purportedly misleading statements were made, the original merger agreement had already been terminated, or that the defendants had stopped working to fulfill the merger's original conditions. Thus, as the complaint stands,

none of the five statements or omissions were so incomplete as to mislead at the time they were made. The mere failure to disclose additional related information that may have been "interesting, marketwise," does not result in 10b–5 liability. *Backman*, 910 F.2d at 16–18.

■ Even if defendants' statements were precisely correct when made, plaintiff alternatively argues that the statements were forward looking, and therefore the Bank had a continuing duty to update them. (Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, 12–13) In support, the plaintiff cites the following from *Backman*: "We may agree that, in special circumstances, a statement, correct at the time, may have a forward intent and connotation upon which the parties may be expected to rely. If this is a clear meaning, and there is a change, correction, more exactly, further disclosure, may be called for." *Id.*, at 17 (citations omitted). However, the *Backman* court also warned that any duty to update for a forward-looking statement would not pertain "to matters outside the scope of the initial disclosure," *Id.* In other words, a defendant must disclose only that information necessary to correct the specific information in the forward-looking statement which is later rendered inaccurate. *See Wilkes v. Heritage Bancorp, Inc.*, Nos. 90–11151–F, 90–11285–F, slip. op. at 12, 1990 WL 263612 (D.Mass. Nov. 21, 1990) (Ponsor, M.), *recommendation adopted*, 767 F.Supp. 1166 (D.Mass.1991) (Freedman, C.J.).

■ Assuming the challenged statements or omissions should even be characterized as forward looking, defendants still had no duty to disclose the alleged renegotiations when they began, because the issue of renegotiations was not within the scope of the initial disclosure. The one reference to renegotiations by Cabot on September 28, 1990 (Complaint ¶ 27), was a warning that "the market's going to have to draw its own conclusions" as to whether the merger price would be renegotiated. Thus, even in light of subsequent renegotiation discussions, the challenged statements "remained precisely correct thereafter." *Backman*, 910 F.2d at 17.

■ The first count of the complaint is also defective in that plaintiff fails to plead fraud with the requisite particularity of Fed.R.Civ.P. 9(b) ("Rule 9(b)"). Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." However, as I noted in *Akerman v. Bankworcester Corp.*, 751 F.Supp. 11, 12 (D.Mass.1990), when allegations of fraud are based on "information and belief," as here, our circuit has adopted a stricter standard:

> A number of courts have held that allegations based on 'information and belief' do not satisfy the particularity requirement unless the complaint sets forth the facts on which the belief is founded. The requirement that supporting facts be pleaded applies even when the fraud relates to matters peculiarly within the knowledge of the opposing party.

*Wayne Investment, Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 12–14 (1st Cir.1984) (citations omitted). Courts have been "especially rigorous in demanding such factual support in the securities context to minimize the chance 'that a plaintiff with a largely groundless claim will bring a suit and conduct extensive discovery in the hopes that the process will reveal relevant evidence.'" *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir.1991) (citing *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir.1987)).

■ Plaintiff has not pleaded sufficient factual support for his allegation that merger renegotiations began as early as September 28, 1991. Plaintiff relies mainly on the speculation of certain investment professionals on September 28, 1990, that the merger would not go "through 'at the stated price' if at all," (Complaint ¶ 26) because of BankWorcester's increasing number of nonperforming assets. The speculation of industry analysts provides no support for allegations of fraud made

on information and belief[1]; such speculation "does nothing to show that fraud was actually committed." *Wayne Investment,* 739 F.2d at 14. On the present pleadings, the earliest that renegotiations can be said to have occurred is around October 15, 1990. Thus, both the September 28th statement by Cabot and the September 29th statement by Keller could not have been misleading, because plaintiff has not pled facts to indicate that renegotiation discussions had begun. The last three statements or omissions were also not misleading in connection with "the purchase or sale of ... [a] security" where the statements were made *after* plaintiff purchased his shares on October 2. 15 U.S.C. § 78j(b). "The Supreme Court has interpreted the 'in connection with' language to require an actual purchase or sale of a security that is connected with a challenged statement." *Konstantinakos v. Federal Deposit Ins. Corp.,* 719 F.Supp. 35, 37 (D.Mass.1989) (citing *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 737–38, 95 S.Ct. 1917, 1926, 44 L.Ed.2d 539 (1975)).

More fundamentally, the complaint does not adequately explain how defendants' nondisclosures rendered any of the challenged statements misleading. "Without that information in the complaint, there can be no liability under Rule 10b–5." *Konstantinakos,* 719 F.Supp. at 38–39. *See also Driscoll v. Landmark Bank for Savings,* 758 F.Supp. 48, 52 (D.Mass.1991). Plaintiff only repeats each challenged statement and then concludes, without more, that it was misleading for failure to disclose the alleged renegotiations. Accordingly, the complaint fails to satisfy Rule 9(b) in this respect as well.

*Counts Two and Three of Plaintiff's Complaint*

The remaining counts are for common law fraud and deceit and plaintiff's claim for negligent misrepresentation. Pursuant to 28 U.S.C. § 1367(c)(3), supplemental jurisdiction is discretionary where "the district court has dismissed all claims over which it

has original jurisdiction." Dismissal of plaintiff's federal securities claims in Count One of the complaint will dispose of the only federal question raised in this case. Where the federal claims are dismissed before trial, it is well settled that any supplemental state claims should also be dismissed. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Akerman,* 751 F.Supp. at 13; *Loan v. Federal Deposit Ins. Corp.,* 717 F.Supp. 964, 969 (D.Mass. 1989).

ACCORDINGLY, defendants' motion to dismiss is allowed as to the entire action. Judgment of dismissal shall enter forthwith.

bet on the completion of the merger anyway.

---

1. In fact, this publicity suggests that plaintiff had notice of the risks, but elected to place his