Robert E. DRISCOLL, Plaintiff,

v.

LANDMARK BANK FOR SAVINGS, John E. Stewart, Kenneth A. Peterson, and Peter C. Conley, Defendants.

Civ. A. No. 90–11593–C.

United States District Court, D. Massachusetts.

Feb. 28, 1991.

Glen DeValerio, Melissa McKeithen Thomson, Berman, DeValerio & Pease, Boston, Mass., for plaintiff.

John C. Englander, Kenneth A. Cohen, David Laurence Veator, Goodwin, Procter & Hoar, Boston, Mass., for defendants.

## MEMORANDUM

CAFFREY, Senior District Judge.

This case is before the Court on the defendants', Landmark Bank for Savings ("Landmark") and three of its officers, motion to dismiss the plaintiff's claims for failure to plead fraud with particularity under Fed.R.Civ.P. 9(b), and for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). The plaintiff, Robert E. Driscoll, commenced this action against the defendants to recover damages allegedly incurred in reliance on statements in corporate reports and press releases which plaintiff contends misrepresented Landmark's true financial condition. The first count is against all defendants for violation of Section 10(b) and Rule 10b–5 of the Securities and Exchange Act of 1934 ("Exchange Act"), and against the three individual defendants for violation of Section 20(a) of the Exchange Act. 15 U.S.C. §§ 78j(b), 78t(a); 17 C.F.R. § 240.10b–5. The final two counts are against all four defendants for state common law fraud and deceit, and negligent misrepresentation. Jurisdiction is founded on the Exchange Act, 15 U.S.C. § 78aa. For the reasons stated below, the defendants' motion to dismiss should be granted.

## I.

For the purposes of this motion, the facts as alleged in the complaint are accepted as true. Landmark is a Massachusetts chartered savings bank based in Whitman, Massachusetts. At all relevant times, Landmark's common stock was traded publicly on the "NASDAQ" national market system. The three individual defendants are officers of Landmark: John E. Stewart is the president and chief executive officer; Kenneth A. Peterson is a vice president and treasurer; and Peter C. Conley is a commercial loan officer and a vice president. These corporate officers controlled Landmark at all times relevant to this motion.

Robert Driscoll brought this suit as a class action [1] after Landmark announced that its non-performing assets had increased dramatically due to the "deterioration in the New England real estate market." As a result, loan loss reserves were increased, the payment of the quarterly dividend was suspended, and the bank reported losses in its net earnings. Driscoll purchased 1,200 shares of Landmark common stock on February 27, 1989, at $12.25 per share, and purchased another 1,200 shares on July 28, 1989, at $8.25 per share.

Plaintiff alleges that during the class period, from May 19, 1988, to January 26, 1990, the defendants misrepresented and concealed material information regarding the true financial condition of Landmark. This alleged scheme was employed to maintain artificially the high market prices of Landmark's stock. Further, the plaintiff alleges that Landmark's statements were false and misleading because they omitted certain facts. The alleged omissions delineated by the plaintiff are that Landmark's Board rejected the merger offers to conceal the adverse nature of the bank's financial condition and to protect their positions as members of senior management; that Landmark had inadequate loan controls and consequently overstated the bank's net worth, assets and income; and that Landmark failed to maintain adequate loan loss reserves. The plaintiff contends that the

defendants accomplished this through a series of materially misleading and untrue public statements, including press releases and periodic reports to shareholders and the Federal Deposit Insurance Corporation ("FDIC").

For example, in May 1988, Landmark received an unsolicited offer from Abington Bancorp, Inc., to discuss a possible merger. In March 1989, Landmark received a second offer of merger from Co-Operative Bank of Concord, and in May 1989, Landmark received another offer from Abington. Each proposal offered a premium over Landmark stock's then current market price, and in each instance, Landmark's Board rejected the proposals as inadequate.

With respect to earnings, during the first three quarters of 1988, Landmark reported a net income of $0.25–0.35 per share and that it had one non-performing commercial mortgage totalling $969,000. The bank also assured investors that it considered its non-performing residential loans well secured and it expected to resolve its non-performing loans early in 1989. In February 1989, Landmark reported a net income of $0.15 per share for the fourth quarter. In June 1989, Landmark disclosed its first quarter net income at $0.23 per share, and reported further increases in non-performing loans. Thereafter, Landmark issued a press release reporting its intention to increase its loan loss reserves by $1,850,000 because of an expected increase in non-performing loans as a result of the current conditions in the New England real estate market. Landmark also stated that the increase in the loan loss reserves was not expected to affect its dividend policy.

Subsequently, in August 1989, Landmark reported a second quarter loss of net income of $1,662,000. Then, in January 1990, as a result of the continued downturn in the real estate market, Landmark's Board suspended payment of the bank's quarterly dividend. During the class period Landmark's common stock traded in the open market at prices as high as $14.50 per

---

1. The class action discussed herein has not been certified.

share. At the close of the class period Landmark's stock was trading at prices as low as $2.50 per share.

## II.

■ Defendants contend that the federal securities fraud claims should be dismissed for failure to plead fraud with sufficient detail and particularity as required by Fed. R.Civ.P. 9(b).[2] In deciding this motion, the Court must accept the factual allegations set forth in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990); *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989). Furthermore, the complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Dartmouth Review,* 889 F.2d at 16. In light of this standard, this Court shall examine the claims against the defendants.

■ When a complaint sounds in fraud, Rule 9(b) requires that the allegations of fraud be plead with particularity. Rule 9(b) states that "[i]n averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other conditions of the mind of a person may be averred generally." Additionally, in considering a motion to dismiss, the Court must weigh Rule 9 against the general policy of Rule 8 notice pleading.[3] The First Circuit has held that to satisfy Rule 9(b), a pleading must specify the "time, place, and content of an alleged false representation but not the circumstances or evidence from which the fraudulent intent could be inferred." *Hayduk v. Lanna,* 775 F.2d 441, 444 (1st Cir.1985) (citing *McGinty v. Beranger Volkswagen, Inc,* 633 F.2d 226, 229 (1st Cir.1980)); *Wayne Inv., Inc. v.*

*Gulf Oil Corp.,* 739 F.2d 11, 13–14 (1st Cir.1984). Rule 9(b) applies to all claims where "fraud lies at the core of the action," which includes securities fraud claims. *Hayduk,* 775 F.2d at 443. Therefore, this particularity requirement applies to plaintiff's Section 10(b), Rule 10b–5, and state common law fraud claims.

In the securities context, this circuit has strictly applied Rule 9(b). *See, e.g., New England Data Services, Inc. v. Becher,* 829 F.2d 286, 288 (1st Cir.1987); *Hayduk,* 775 F.2d at 443; *Wayne,* 739 F.2d at 13 (Rule 9(b) strictly applies in the context of securities fraud due to the concern for the expensive nature of litigation costs that give "strike suits" their *"in terrorem"* effect). Thus, it has been held that Rule 9(b) applies even when the fraud relates to facts and circumstances that are exclusively within the knowledge of the defendant. *Becher,* 829 F.2d at 288; *Hayduk,* 775 F.2d at 444; *Wayne,* 739 F.2d at 13. The First Circuit in *Wayne Investment* stated that allegations based upon "information and belief" do not satisfy the particularity requirement unless the complaint sets forth the facts upon which the belief is founded, even if the supporting facts are "peculiarly within the knowledge of the opposing party." 739 F.2d at 13–14.

■ Moreover, the circumstances constituting the misrepresentations must be specific, in order to provide an underlying basis for the claim. *See Hayduk,* 775 F.2d at 444. Allegations in the form of mere conclusions, accusations, or speculation are not sufficient to meet Rule 9(b)'s particularity requirement without supporting facts surrounding the scheme to defraud or a basis for believing such a scheme existed. *See id.; Wayne,* 739 F.2d at 14 ("purely speculative allegations of fraud" are not sufficient under Rule 9(b)); *see also Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982) ("conclusory allegations

---

**2.** Motions to dismiss for failure to satisfy Rule 9(b)'s particularity requirement may properly be characterized as motions to dismiss for failure to state a claim, pursuant to Rule 12(b)(6). *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1300.

**3.** Fed.R.Civ.P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

that defendant's conduct was fraudulent or deceptive are not enough"); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990) (Rule 9(b) requires the "circumstances" constituting fraud to be plead in detail; this means "the who, what, when, where, and how"); *Haft v. Eastland Financial Corp.*, 755 F.Supp. 1123, 1130 (D.R.I.1991) (plaintiffs' complaint must convey "some sense of how they came to believe that fraud was at the heart of their losses" by explaining how the challenged statements were untrue); *Akerman v. Bankworcester Corp.*, 751 F.Supp. 11, 12 (D.Mass.1990) ("conclusory statements that pertain more to mismanagement than to misrepresentations" do not satisfy Rule 9(b)); *Loan v. Federal Deposit Ins. Corp.*, 717 F.Supp. 964, 967 (D.Mass.1989) ("plaintiff has an obligation to explain what is untrue about each of the challenged statements and cannot merely quote a statement and assert that it is untrue"). *But see Save On Surplus Pension Plan v. United Saver's Bankcorp, Inc.*, No. 89–543–D (D.N.H. Sept. 24, 1990) (Rule 9(b) requires plaintiff to plead no more than "time, place, and content" of the misrepresentation); *Akerman v. Amoskeag Bank Shares*, No. C–90–119–L, slip op. at 7–8, (D.N.H. May 9, 1990) (same). Rule 9(b) does not require the plaintiff to present specific evidence; however, the plaintiff must identify some facts or circumstances to support the allegations of fraud, beyond the mere allegation of corporate mismanagement or general economic downturn. *See, e.g., Becher*, 829 F.2d at 288; *Hayduk*, 775 F.2d at 444; *Wayne*, 739 F.2d at 14; *Konstantinakos v. Federal Deposit Ins. Corp.*, 719 F.Supp. 35, 38 (D.Mass.1989). This requirement is meant to put the defendants on notice of what they did wrong and to enable them to frame a responsive pleading. *Hayduk*, 775 F.2d at 444. Complaints that merely restate the elements of a claim are not sufficient to meet Rule 9(b). *See Hayduk*, 775 F.2d at 444–45. Thus, a complaint must make some step toward explaining how and why the statements made by the defendants were false and misleading when made.

 Whether a complaint is sufficient to meet Rule 9(b)'s particularity requirement is a fact-oriented determination. Therefore, the sufficiency of the plaintiff's complaint must also be assessed in light of the purposes of Rule 9(b). The rule's purposes are three-fold.[4] *Becher*, 829 F.2d at 289. The first goal of Rule 9(b) is to "place the defendants on notice and enable them to prepare meaningful responses" to charges of fraud, thereby protecting them from unfair surprise. *Id.* Second, Rule 9(b) aims to "preclude the use of groundless fraud claims as a pretext to discovering a wrong or as a 'strike suit.'" *Id.* Lastly, Rule 9(b) seeks to "safeguard defendants from frivolous charges which might damage their reputations." *Id.* This Court will now turn to an application of these principles and policies to the present case.

 Plaintiff argues that by quoting extensively from specific documents and public statements that he alleges were false and misleading when made he has met all that is required under Rule 9(b). Further, the plaintiff contends that Rule 9(b) does not require him to plead the circumstances of the fraud with more particularity beyond stating the "time, place, and content" of the misrepresentations based on the information which is publicly available, when the underlying facts are solely within the possession of the defendant. The defendants argue, however, that the plaintiff has failed to meet the requirements of Rule 9(b) because he has failed to plead any factual basis for the fraud and has also failed to identify the particular statements which he considers false and misleading. As a result, the defendants argue they do not know which statements they must prepare to defend themselves against.

Plaintiff's allegations of fraud appear to focus solely on the timing of the defendants' public statements. The plaintiff

---

4. The First Circuit has also recognized that Rule 9(b) was intended to discourage the filing of suits in hopes of "turning up relevant information during discovery," or "obtaining an increased settlement." *See Becher*, 829 F.2d at 288.

seems to argue that the reported loss in earnings followed too closely the rejection of the three merger proposals and the other optimistic statements regarding the bank's earnings. Therefore, the plaintiff contends that Landmark rejected the offers in order to conceal the alleged fraud. In light of the standard discussed above, plaintiff's allegations of fraud are insufficient to meet Rule 9(b)'s particularity requirement.

As discussed previously, it is well settled that Rule 9(b) applies even when the fraud relates to matters within the knowledge of the defendant and that allegations based on information and belief do not satisfy Rule 9(b) unless the complaint sets forth the facts upon which the belief is founded. *See Hayduk*, 775 F.2d at 444; *Wayne*, 739 F.2d at 14. In this case, although the plaintiff may have established a possible motive for the fraud, namely, to entrench management or to maintain the artificially high prices of Landmark's stock, he has presented no evidence to show that a fraud was actually committed. Furthermore, the inference one may draw from the timing of the public statements and releases is not sufficient, without additional supporting facts and circumstances, to withstand the strict requirements of Rule 9(b).

With respect to the first purpose of Rule 9(b), notice, the plaintiff argues that quoting extensively from specific statements and alleging that those statements are false and misleading when made, provided adequate notice to the defendants. *See Becher*, 829 F.2d at 289. The plaintiff's allegations, however, are insufficient to provide reasonable notice to the defendants of the nature of the claims brought against them. Plaintiff's allegations of Landmark's insufficient loan loss reserves, inadequate loan review procedures, rejection of the merger proposals, and refusal to declare a dividend are all so conclusory in nature that they could easily apply to any bank in New England. Moreover, the complaint lacks any supporting facts or prob-

lems specific to Landmark beyond the public disclosures.

By way of example, the plaintiff has failed to allege that any particular loan should have been treated in a different way, that there existed any specific deficiencies in the bank's loan review procedures, that any particular problem was hidden from the public, or to what extent the earnings were overstated. The conclusory and speculative statements offered without any supporting facts or circumstances, viewed in the light most favorable to the plaintiff, are insufficient to create even a reasonable inference of fraud and pertain more to mismanagement than to misrepresentations. Moreover, although the plaintiff has quoted directly from various statements made by the defendants, he has not provided the defendants with any focus or informed them which statements are alleged to be false and misleading and which are merely surplusage or background. As a result, the defendants cannot prepare meaningful responses to the plaintiff's allegations of fraud.

The final two purposes of Rule 9(b) are to protect the defendants against groundless "strike suits," and to "safeguard the defendants from frivolous charges which may damage their reputations." *Becher*, 829 F.2d at 289. In this case, the plaintiff's complaint resembles a "strike suit" because it does not provide any basis why the statements are fraudulent.[5] This is particularly the type of suit Rule 9(b) is intended to discourage. If this complaint is sufficient, any plaintiff could file a suit against any New England bank that has experienced losses as a result of this period of recent economic downturn. In *Becher*, the First Circuit stated that Rule 9(b) is to be strictly applied out of fear that a "plaintiff with a largely groundless claim will bring a suit and conduct extensive discovery in hopes of obtaining an increased settlement, rather than in hopes that the process will reveal relevant evidence." 829 F.2d at 288; *see also Wayne*, 739 F.2d at 13. If this lawsuit were allowed to proceed

---

**5.** In addition, paragraphs 43 and 49 of the plaintiff's complaint refers to "Landmark" as "Eliot," apparently a remnant of a prior complaint filed against Eliot Bank.

to discovery, Landmark would be tempted to settle to avoid the irreparable harm to its reputation and goodwill that may result from public litigation.

■ Thus, this Court finds plaintiff's allegations of fraud against Landmark, under Section 10(b) and Rule 10b–5 of the Exchange Act, insufficient to meet Rule 9(b)'s particularity requirement. The remaining issues raised in Count I, regarding the securities fraud claims against the three individual defendants are moot and are not addressed in light of the dismissal of the underlying claims against Landmark.[6]

### III.

■ The plaintiff's complaint also alleges state common law claims of fraud and deceit, and negligent misrepresentation. Pendent jurisdiction is a matter of discretion justified by considerations of judicial economy, convenience and fairness to litigants. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Konstantinakos*, 719 F.Supp. at 42. Accordingly, plaintiff's state law claims are dismissed for lack of subject matter jurisdiction. Therefore, this Court need not address whether the plaintiff has succeeded in stating a claim under Rule 9(b) and 12(b)(6) with respect to the pendent state claims.

■ For all of the reasons stated above, defendants' motion to dismiss plaintiff's claims should be granted and plaintiff's claims are dismissed without prejudice.[7]

Order accordingly.

---

6. Where the allegations of fraud against the individual defendants are based on the same facts and circumstance as that of the corporate defendant, the sufficiency of the allegations against the individual defendants turns on whether the allegations are sufficient against the corporation. *See Wilkes v. Heritage Bankcorp, Inc.*, No. 90–11151–F, slip op. at 17 n. 4, 1990 WL 263612 (D.Mass. Nov. 21, 1990); *Hurley v. Federal Deposit Ins. Corp.*, 719 F.Supp. 27, 31–33 (D.Mass.1989). Therefore, if the claim against Landmark fails under Rule 9(b), then the claims must also fail against the individual defendants.

7. Plaintiff is granted leave to amend his complaint within 30 days from the date of this ruling. Such amendment, however, is allowed only in accordance with this memorandum and the particularity requirement of Rule 9(b).