**In re HEALTHCO INTERNATIONAL, INC. SECURITIES LITIGATION.**

**This Document Relates To: All Actions.**

**Master File No. 91–10710 MA.**
**BBO Nos. 097800, 549198.**

United States District Court,
D. Massachusetts.

Nov. 7, 1991.

Glen DeValerio, Norman Berman, Berman, DeValerio & Pease; Alfred E. Nugent, Boston, Mass.; Max Berger, Bernstein, Litowitz, Berger & Grossman; and Robert Harwood, Wechsler, Skirnickarwood, Halebian Feffer, New York City, for plaintiffs.

Sanford F. Remz, Widett, Slater & Goldman; Marjorie S. Cooke, Goodwin, Proctor & Hoar, Boston, Mass.; and Joseph Allerhand, Weil, Gotshal & Manages, New York City, for defendants.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This is a consolidated class action suit in which the named Plaintiffs, 1330 Nineteenth Street Corp., Michael G. Feder, and Sonem Partners, Ltd., are acting on the behalf of all persons, other than Defendants, who purchased the common stock of Healthco International, Inc. ("Healthco") between November 14, 1990 and February 25, 1991. Plaintiff stockholders allege that Defendants, Healthco International, Inc. ("Healthco") and Marvin M. Cyker ("Cyker"), the Chairman of the Board and Chief Executive Officer of Healthco at all relevant times, committed securities fraud by making false and misleading statements in materials distributed to Healthco shareholders and the investing public during this class period.[1] Plaintiffs claim that Cyker prompted these unlawful practices in order to retain his control of Healthco and his continued salary, retirement benefits, stock sales proceeds and stock options. Count I of the complaint arises under sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission at 17 C.F.R. § 240.10b–5. Counts II and III are based on common law fraud and negligent misrepresentation, respectively. The case is now before me on Defendants' motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) and failure to plead

---

1. The class period in the Consolidated Class Action Complaint runs from the date Healthco filed its third quarter Form 10–Q, November 14, 1990, to the date Healthco announced its expected losses for the fourth quarter, February 25, 1991.

fraud with particularity under Fed.R.Civ.P. 9(b). Jurisdiction is founded on the Exchange Act of 1934, 15 U.S.C. § 78aa. Plaintiffs have filed an opposition and both parties have filed supporting memoranda. For the reasons stated below, I grant the motion to dismiss on all counts.

## I. Factual Allegations

The pertinent factual allegations are as follows. Healthco is a national distributor of dental supplies and services whose stock was traded publicly at all relevant times on the Over–The–Counter market. During the spring and summer of 1990, Healthco was engaged in a struggle for control of the company with Gemini Partners, L.P. ("Gemini") which had acquired nearly ten percent of Healthco's shares. Both parties filed suit against each other in connection with this struggle. On September 4, 1990, two days before the scheduled annual shareholder's meeting, Healthco announced it had entered into a merger agreement with HMD Acquisition, an affiliate of Hicks, Muse, Inc., ("Hicks, Muse"), a Texas based private investment firm specializing in leveraged buyouts. Pursuant to the Merger Agreement, shareholders of Healthco were to receive $19.25 for each share of the Healthco common stock they held. The Agreement was subject to approval of Healthco's stockholders, the securing of financing for the merger by Hicks, Muse, and, in conjunction with the financing condition, the realization of a projected $34.4 million by Healthco in earnings before interest, taxes, depreciation and amortization (the "EBITDA condition").[2] In addition, both parties agreed that the Agreement could be terminated if the merger was not consummated on or before February 28, 1991.

On September 10, 1990, pursuant to a settlement agreement with Gemini, Healthco allowed Gemini to occupy three out of seven seats on its Board of Directors. The Settlement Agreement also provided that, if the merger with Hicks, Muse was not successful, the total number of directors would be increased to nine and the two new directors would be approved by the six non-management Board members, a majority of which, Plaintiffs allege, were aligned with Gemini. According to Plaintiffs, this would effectively give Gemini control over the Board of Directors and possibly result in the ouster of Cyker.

On November 14, 1990, the beginning of the class period, Healthco filed its Form 10–Q for the third quarter which had ended six weeks earlier on September 29, 1990. It stated that Healthco and Hicks, Muse had:

> entered into a definitive agreement providing for a merger of HMD Acquisition Corporation with and into Healthco at a per share price of $19.25 in cash. Hicks, Muse is a Dallas-based investment firm. The merger is subject to financing and approval of Healthco's stockholders.

The report further indicated that Healthco had agreed to "reimburse Gemini for its actual out-of-pocket expenses incurred in connection with the solicitations and related litigation up to $2,000,000," and had incurred a nonrecurring charge of $5.5 million, before a tax benefit of $2.16 million, for costs associated with the proxy contest and settlement with Gemini.

Plaintiffs allege that Healthco's third quarter report for 1990 was materially false and misleading because it "presented the Merger Agreement as a positive event" and "supported the impression there was a reasonable basis for Healthco's consummation of the transaction with Hicks, Muse." Plaintiffs further allege that the report fails to disclose that charges other than the $5.5 million in relation to the proxy contest would be taken in the fourth quarter and that "these additional charges would contribute to a material shortfall in earnings" that Defendants knew would jeopardize the Merger Agreement. Since the Form 10–Q was not published until six weeks into the fourth quarter, Plaintiffs also allege that it

---

**2.** Healthco's 1990 financial projections were used by Hicks, Muse in setting its proposed acquisition price of $19.25 per share. Healthco projected a 1990 EBITDA of $38 million in their

Proxy Statement dated January 4, 1991. In that same Proxy Statement, Hicks, Muse separately projected an EBITDA of $34.4 million for Healthco in 1990.

was materially false and misleading because there was no disclosure of material facts known to Defendants about Healthco's losses in the fourth quarter.

On December 12, 1990, *Federal Filings*, a business newswire affiliated with Dow Jones & Co., reported that a spokesman from Healthco had said he was confident that the $19.25 cash merger agreement would close by late February. The report further stated that:

> Stan Kay, of Dewe Rogerson, public relations representative for Healthco, told Federal Filings he would be "completely amazed" if Hicks Muse does not obtain financing for the merger, adding that the leveraged buyout firm has a "perfect record" of arranging acquisition financing ... Kay said he was "comfortable" that the deal would close before the late February deadline.

Plaintiffs allege that these statements were materially false and misleading in the same manner as the third quarter report.[3]

On January 4, 1991, six days after the end of its 1990 fiscal year, Healthco distributed its Proxy Statement regarding the merger with Hicks, Muse. The Proxy Statement expressly indicated that: 1) the financing for the merger was contingent on, among other things, Healthco reaching its projected $34.4 million EBITDA mark, and 2) the merger could otherwise be terminated on February 28, 1991. In addition, a number of statements appeared at key points in the Proxy Statement warning readers about the limited predictive value of the financial data contained in the statement. *See infra* p. 115.

Notwithstanding these cautionary statements, Plaintiffs allege in their Consolidated Class Action Complaint that the January 4, 1991 Proxy Statement "was materially false and misleading because, even though Healthco's 1990 fiscal year had already ended, there was no disclosure of material facts known to Defendants concerning Healthco's negative financial results for the fourth quarter and full year 1990, which results would cause the merger at the price of $19.25 not to be consummated." Plaintiffs further allege that the cautionary language that did appear was inconsequential to the merger because it referred to "future economic and competitive conditions" and, therefore, did not concern the projections for fiscal year 1990 which had ended shortly before the Proxy Statement was published.

On February 5, 1991, the stockholders of Healthco voted in favor of the merger at a special meeting held for that purpose. On February 25, 1991, Healthco announced for the first time that it expected an unspecified loss for its fourth quarter of 1990 and a total net loss of approximately $5 million for the 1990 fiscal year. The price of shares of Healthco's common stock, which closed at $18 per share on February 24, 1991, fell to $14.25 per share following the announcement. On March 1, 1991, Healthco announced that it had terminated the agreement with Hicks, Muse stating that it could not meet certain conditions of the Agreement. On March 27, 1991, Hicks, Muse announced that it had entered into a New Merger Agreement providing for the acquisition of Healthco at a per share price of $15.00 in cash. Healthco's 1990 10K Annual Report filed on March 29, 1991 revealed that Healthco's gross margins for the fourth quarter of 1990 had fallen by over 27.5 percent. Expenses had also increased in comparison to the first three quarters of 1990, and Healthco had added approximately $4 million to the non-recurring charge of $5.5 million taken in the third quarter of 1990 for costs related to the proxy contest with Gemini.

## II. Standards for Dismissal

■ In reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Correa–Martinez v. Arilla-*

---

**3.** That is, the statement failed to disclose "material facts known to Defendants about Healthco's performance for the current fourth quarter of 1990 ... that clearly undermined Healthco's ability to consummate the Merger Agreement with Hicks, Muse at a price of $19.25 per share...."

<br>

*ga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990). A complaint can be dismissed only if it appears beyond doubt that Plaintiffs can prove no set of facts which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Lessler v. Little*, 857 F.2d 866, 867 (1st Cir.1988) *cert. denied*, 489 U.S. 1016, 109 S.Ct. 1130, 103 L.Ed.2d 192 (1989).

Rule 9(b) states that "[i]n averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other conditions of the mind of a person may be averred generally." "It is well settled that Rule 9(b) requires the plaintiff in a securities fraud case to specify the time, place, and content of an alleged false representation." *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir.1991). "The requirement that supporting facts be pleaded applies even when the fraud relates to matters peculiarly within the knowledge of the opposing party." *Id.*

The First Circuit has been "especially rigorous in demanding such factual support in the securities context" to minimize the possibility of strike suits in which plaintiffs with " 'largely groundless claims conduct extensive discovery in the hopes of obtaining an increased settlement rather than in the hopes that the process will reveal relevant evidence.' " *Id.* (quoting *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir.1987)); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990) (holding that Rule 9(b) requires the "circumstances" constituting fraud to be plead in detail; this means "the who, what, when, where, and how"). Among other purposes,[4] the First Circuit has recognized that an important purpose of Rule 9(b) is to discourage the filing of suits in the hope of "turning up relevant information during discovery" or "obtaining an increased settlement." *Driscoll v. Landmark Bank for Savings*, 758 F.Supp. 48,

52 n. 4 (D.Mass.1991) (quoting *Becher*, 829 F.2d at 288).

In addition, "Rule 9(b) applies to all claims where 'fraud lies at the core of the action,' which includes securities fraud claims." *Driscoll*, 758 F.Supp. at 51 (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.1985)). Therefore, the particularity requirement of Rule 9(b) applies in this case to Plaintiffs' Section 10(b), Rule 10b–5, and common law fraud claims. *Id.*

Under Rule 10b–5, a statement is material if a reasonable person would attach importance to the statement in deciding whether to buy the stock. *Holmes v. Bateson*, 583 F.2d 542, 557 (1st Cir.1978). "Optimistic, vague projections of future success which prove to be ill-founded are not, without more, sufficiently material to incur Rule 10b–5 liability. When, however, such projections are accompanied by either specific quantification or projected results implying certainty ... or statements of fact which prove to be erroneous, then such statements can be the basis of Rule 10b–5 liability." *Priest v. Zayre Corp.*, Civil Action No. 86–2411–Z, Memorandum of Decision at 5, 1987 WL 10741 (D.Mass. May 1, 1987) (citations omitted).

I will now turn to the application of these standards to Plaintiffs' claims that Defendants made materially false and misleading statements concerning the merger in their 1990 Form 10–Q Third Quarter Report, their public statement of December 12, 1990 in *Federal Filings*, and their January 4, 1991 Proxy Statement.

### III. Healthco's Form 10–Q Third Quarter Report for 1990

Plaintiffs' argument that Healthco's Third Quarter 10–Q Report is false and misleading ignores both the purpose and the content of the report. The Third Quarter Report, as its name directly indicates, provides data on the financial results of

---

**4.** Some of the goals of Rule 9(b) have been recognized to be: placing the defendants on notice and enabling them to prepare meaningful responses to charges of fraud, thereby protecting them from unfair surprise; precluding the use of groundless fraud claims as a pretext to discovering a wrong; and, safeguarding defendants from frivolous charges which might damage their reputations. *Becher*, 829 F.2d at 289.

Healthco's third quarter, not its fourth. The Report specifically states that the data it presents is "not necessarily indicative of the results to be expected for the full fiscal year." No projections were made in the report as to future earnings or the effect of third quarter results on the planned merger. Indeed, Plaintiffs have nowhere alleged that Healthco was suffering substantial financial setbacks in its third quarter that would affect the merger. Nor have Plaintiffs pointed to any statute or regulation requiring Defendants to include material information concerning the fourth quarter in their third quarter report. "A party charged with failing to disclose material information must be under a duty to disclose it in order to be held liable under Rule 10b–5." *In re Par Pharmaceutical, Inc. Securities Litigation,* 733 F.Supp. 668, 674 (S.D.N.Y.1990) (quoting *Chiarella v. United States,* 445 U.S. 222, 228–29, 100 S.Ct. 1108, 1114–15, 63 L.Ed.2d 348 (1980)); *See Roeder v. Alpha Industries, Inc.,* 814 F.2d 22, 26–7 & 27 n. 2 (1st Cir.1987).[5]

Furthermore, Plaintiffs allege that because the Third Quarter Report came out approximately six weeks after the end of the third quarter, Defendants must have been aware of the company's declining fourth quarter performance and should have included that information in the report. Plaintiffs do not set forth, however, any specific circumstances indicating how or why Defendants were or should have been aware, at that time, of this financial decline such that Defendants were obliged to include this information in their Third Quarter Report. Even if Defendants were aware of some problems, no facts are alleged that would indicate Defendants knew the planned merger would not or might not take place because of potential problems in meeting the EBITDA condition.[6] In short, Plaintiffs make only general allegations without any particularized specifics as to how or why Defendants might have known at this time that the EBITDA condition would not be met. Specific facts indicating how or why these statements constitute a false representation, as required by Rule 9(b), are not given. *Driscoll,* 758 F.Supp. at 52 (holding that a complaint "must make some step toward explaining how and why the statements made by Defendants were false and misleading when made.").

Plaintiffs also allege that the Third Quarter Report failed to disclose that charges other than the $5.5 million in relation to the proxy contest would be taken in the fourth quarter and that "these additional charges would contribute to a material shortfall in earnings" that Defendants knew would jeopardize the Merger Agreement. Again, however, the Court is presented with only a general allegation containing no specifics as to what these "additional charges" were or why they might have given Defendants reason to know and warn stockholders that the planned merger would not take place.[7] The strict requirements of Rule 9(b), therefore, have not been met.

---

**5.** In *Roeder,* Judge Bownes found the prevailing view to be that there is no affirmative duty of disclosure unless the situation involves insider trading, a statute or regulation requiring disclosure, or inaccurate, incomplete, or misleading prior disclosures. Footnote 2 in *Roeder* points out that only one case, *Issen v. GSC Enters., Inc.,* 538 F.Supp. 745 (N.D.Ill.1982) has held that all material information must be disclosed in annual reports notwithstanding the lack of a statutory or regulatory duty to disclose. "A general admonition to include 'all material information' in annual reports preempts the promulgated regulations' instructions on what information to include and, because of the threat of civil liability, it would result in all sorts of information appearing in the reports that the SEC may prefer be left out." *Roeder,* 814 F.2d at 27 n. 2.

**6.** At this point, the stockholders had not even voted on the Merger Agreement. The stockholders' meeting during which the merger was voted on took place on February 5, 1991.

**7.** Defendants, in contrast, give several specifics, contending that "there was no material increase in the charge taken by Healthco during the fourth quarter of 1990. As Healthco's 1990 Annual Report makes clear, $3.576 million of the difference between the total $9.427 million non-recurring charge taken through year-end 1990 and the $5.5 million non-recurring charge taken through the third quarter was not related to the Gemini proxy contest and settlement or negotiation of the Merger Agreement, but rather to 'compensation of key management personnel' and 'the unamortized portion of funded supplemental retirement benefits' pursuant to pre-existing employment agreements." This leaves only $351,000 in charges directly related to the proxy contest and settlement.

## IV. Healthco's Public Statement of December 12, 1990

■ Plaintiffs allege in their complaint that Defendants made several false and misleading public statements concerning the merger that appeared in various periodicals. Only one statement which appeared in the December 12, 1990 issue of *Federal Filings*, however, could possibly be considered attributable to Healthco.[8] *See supra* p. 112. That statement included quotes from an individual employed by Dewe Rogerson, the public relations representative of Healthco. Most of the statement referred to the spokesman's conviction that Hicks, Muse would obtain financing for the merger, not to any of the other conditions for the merger. The only quote included concerning the consummation of the Merger Agreement itself was that the spokesman was " 'comfortable' that the deal would close before the late February deadline." This is just the kind of "optimistic, vague projection" unaccompanied by any "specific quantification or projected results implying certainty" that falls short of qualifying as a material misrepresentation under Rule 10b–5. *Priest*, Civil Action No. 86–2411–Z, Memorandum of Decision at 5 (citing *Goldman v. Belden*, 754 F.2d 1059, 1067–90 (2nd Cir.1985); *Wolf v. Polaroid Corp.*, 532 F.Supp. 801, 802–4 (D.Mass.1982)). No reasonable investor would attach importance to such a statement in deciding to buy Healthco's stock at that time.

## V. Healthco's January 4, 1991 Proxy Statement

■ Plaintiffs also allege that Healthco's Proxy Statement, distributed January 4, 1991 was materially false and misleading. This claim seems to be based primarily on Plaintiffs' argument that Defendants must have been aware of Healthco's poor fourth quarter performance when the Proxy Statement was distributed, nearly a week after the close of Healthco's fiscal year, and yet failed to disclose that fact and its impact on the Merger Agreement.[9] *See supra* pp. 112–113. Plaintiffs further argue that any cautionary language that appeared in the Proxy Statement was inadequate relative to the merger because such statements referred to "future economic and competitive conditions" and not to the apposite 1990 fiscal year. Upon close examination of the language of the Proxy Statement, both arguments fail.

Declarations affirming the fact that the merger was subject to the satisfaction or waiver of all conditions appeared at numerous points in the Proxy Statement. For example, the section of the Proxy Statement entitled "Financing Arrangements," contains the announcement; "Hicks Muse has further advised the Company [Healthco] that it is highly confident that it will be able to obtain subordinated debt and preferred stock financing for the Merger, although there can be no assurance that such will be the case." Subsequent financial projections in the Proxy Statement were prefaced by an entire page of cautionary language including warnings that the "projections are based upon a variety of estimates and assumptions" that "may not be realized, and are inherently subject to significant economic, competitive and business uncertainties ... all of which are difficult to predict." The warning "[s]tockholders are cautioned not to place undue reliance

---

**8.** Plaintiffs' Consolidated Class Action Complaint mentions five other public statements concerning the planned merger. None of these statements, however, appear to have been made by any employee or spokesperson of Healthco or are otherwise attributable to the Defendants.

**9.** Plaintiffs state in their Memorandum in Opposition to Defendants' Motion to Dismiss that "[i]t is simply not plausible that defendants did not know that the business had suffered a severe and dramatic downturn during the fourth quarter of 1990." No specific allegations are made, however, as to why it is not plausible. Plaintiffs aver no facts as to how Defendants' accounting system would or should have made them aware of any concrete financial figures for the fourth quarter before February 25, 1991 when Healthco announced its expected losses for the fourth quarter. "The requirement that supporting facts be pleaded applies even when the fraud relates to matters peculiarly within the knowledge of the opposing party." *Romani*, 929 F.2d at 878.

on the projections" appeared in bold print. Readers were informed that "there can be no assurance that such projections will be realized, and actual results may vary materially from those shown." In short, the type and frequency of the warnings given were such that no reasonable investor would be unfairly mislead by financial data that reflected positively upon the planned merger.

Furthermore, a fair reading of the Proxy Statement belies the argument that any warnings in the statement referred to future fiscal years and not fiscal year 1990. In the section entitled "Selected Projected Financial Information," the Proxy Statement included 1990 EBITDA projections for Healthco generated both by Healthco and Hicks, Muse for $38 million and $34.4 million respectively. Healthco explained on the page directly preceding these projections that they "were prepared by management of the Company [Healthco] and furnished to the Special Committee and the Board at their respective September 3, 1990 special meetings," nearly four months before the end of their 1990 fiscal year. Later on the same page, stockholders were warned that Healthco did not intend to update these projections "to reflect the occurrence of unanticipated events" and that Hicks, Muse did not intend to update or "revise the projections supplied to potential financing sources to reflect circumstances existing after October 2, 1990." No reasonable investor, after reading this, could conclude that the projections were for future years only and not the 1990 fiscal year.

What this case boils down to is an attempt by Plaintiffs to shift the effects of their own investment decision to the Defendants. Plaintiffs have scoured the record and selectively presented portions that, considered separately, would support their allegations of material misrepresentation. However, a careful examination of the entire record presented in the pleadings, even when examined in a light most favorable to Plaintiffs, shows they were fully and fairly apprised of the risks involved in this venture. The record, read fairly, does not contain instances of material and false representations.

In light of the above findings, the Court finds that Plaintiffs have not pled their complaint with sufficient specificity and particularity to aver that Defendants made materially false and misleading statements with respect to the planned merger. Defendants' motion to dismiss is granted with respect to Count I, alleging violations of sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission at 17 C.F.R. § 240.-10b–5.

Counts II and III, which are based on common law fraud and negligent misrepresentation, are pendant state claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Pendant subject matter jurisdiction is based on "considerations of judicial economy, convenience and fairness to litigants" and is discretionary. *Id.* at 726, 86 S.Ct. at 1139. In situations such as this, where "all the federal claims are dismissed before trial," the Supreme Court has suggested that "the state claims should be dismissed as well." *Id.* Consequently, I dismiss Counts II and III of Plaintiffs' complaint for lack of subject matter jurisdiction.

SO ORDERED.