**Chanel VACHON and Richard Green Associates, Inc. Pension Trust, Plaintiffs,**

**v.**

**BAYBANKS, INC., William M. Grozier, Jr., Richard F. Pollard, and William T. Sandalls, Jr., Defendants.**

**Civ. A. No. 90–10758–T.**

United States District Court,
D. Massachusetts.

Dec. 30, 1991.

Thomas G. Shapiro, Shapiro, Grace & Haber, Boston, Mass., for Chanel Vachon.

Francis C. Lynch, Laurie S. Gill, Palmer & Dodge, Boston, Mass., for BayBanks, Inc., William M. Crozier, Jr., Richard F. Pollard, William T. Sandalls, Jr., John J. Arena, John A. Cervieri, Jr., Norman E. MacNeil, James R. Strehle and James R. Bassett.

Larry L. Smith, Jr., Boston, Mass., for Jerome H. Grossman.

Michael C. Donahue, Gelerman & Cashman, Dedham, Mass., for Lorraine O'Brien.

Robert A. McKenney, Rull & McKenney, South Boston, Mass., for Robert J. O'Leary.

Christopher Patrick Sullivan, Carolan, Sullivan & Greeley, Boston, Mass., for Ellen Sullivan.

## MEMORANDUM

TAURO, District Judge.

Plaintiffs Chanel Vachon and Richard Green Associates, Inc. Pension Fund, purchasers of shares of defendant BayBanks, Inc. ("BayBanks"), allege that BayBanks made a number of false and misleading statements, in violation of Rule 10b–5 and § 10(b) of the Securities Exchange Act of 1934 (the "Act"), between March 8, 1988 and March 15, 1990 (the "class period"). BayBanks' officers, William M. Crozier, Jr., Richard F. Pollard, and William T. Sandalls, Jr., also defendants, are alleged to have been "control persons" under § 20 of the Act. Plaintiffs' Amended Class Action Complaint ("Complaint") purports to sue on behalf of all those who purchased BayBanks' common stock during the class period.

During that time, BayBanks issued a number of public statements in which it said, among other things, that its loan loss reserves were "adequate." *See* Complaint ¶ 20. BayBanks called its lending practices "conservative" and "careful," ¶¶ 27–28, and stated that it "appear[ed] to be adjusting well" to the real-estate recession. ¶ 35.

Plaintiffs contend that these statements were materially false and misleading. They argue, with respect to the loan loss reserves, that, in light of prevailing economic conditions and industry standards, the reserves were grossly inadequate. ¶ 47(a). BayBanks' announcement, on March 15, 1990, that it would double its loan loss reserves, is said to evidence the inadequacy of the reserves until then. ¶¶ 44, 48(f). With respect to BayBanks' lending practices, plaintiffs contend that loan policies were disregarded, despite claims to careful and conservative management. ¶ 47(b).

The defendants have moved to dismiss the complaint under Fed.R.Civ.P. 9(b) and 12(b)(6), asserting that plaintiffs have failed to plead fraud with particularity. In order to withstand defendants' motion, the complaint must "specify the time, place and content" of the alleged false representations and contain "factual allegations that would support a reasonable inference that adverse circumstances existed at the time of the [representations], and were known and deliberately or recklessly disregarded by defendants." *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir.1991).

## A. *Prevailing Economic Conditions*

Plaintiffs claim that the economic recession affecting the New England real-estate market made BayBanks' loan loss reserves "grossly inadequate," and that BayBanks' failure to disclose this inadequacy was a materially misleading omission. Complaint ¶ 47. In order, however, to credit this allegation, this court would have "to accept questionable corporate business judgments as the basis for securities fraud suits." *Wilkes v. Heritage Bancorp, Inc.*, 767 F.Supp. 1166, 1171 (D.Mass.1991). Plaintiffs' complaint asserts, in essence, "corporate mismanagement and poor business judgment in coping with the general economic downturn, rather than fraud." *Shields v. Amoskeag Bank Shares, Inc.*, 766 F.Supp. 32, 38 (D.N.H.1991). It is "axiomatic that the federal securities laws do not provide a cause of action for corporate mismanagement." *Konstantinakos v. Federal Deposit Ins. Corp.*, 719 F.Supp. 35, 39 n. 7 (D.Mass.1989).

The complaint chronicles that BayBanks, having announced a policy of keeping lower reserves than suggested by security analysts' "rules of thumb," prospered throughout 1988 and 1989. ¶¶ 20, 23, 30, 32, 34, 42. The complaint also shows that BayBanks announced a substantial increase in its loan loss reserves during this time, ¶¶ 33, 34, 42, before it reported, on March 15, 1990, a first-quarter loss and a doubling of its reserves. ¶ 44. These facts do not disclose "circumstances that might separate fraud from the benefit of hindsight." *DiLeo v. Ernst & Young*, 901 F.2d 624, 628 (7th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990). As in *DiLeo*, the "gist of the [plaintiffs'] complaint is

that [the bank] did not increase its reserves fast enough," and that this failure "amounted to 'fraud.' " *Id.* at 626, 627. Yet the complaint alleges no facts that would support a reasonable inference that BayBanks' "problems were so apparent that reserves should have been jacked up before" they were. *Id.* at 627. The declining New England economy, to which plaintiffs point, is an insufficient circumstance on which to base a charge of fraud. *See, e.g., Shields,* 766 F.Supp. at 38 ("[A]llegations such as those set out in ... this complaint [are] so general that they could be filed against any financial institution in New England.").

Because the complaint contains no facts indicative of any problem specific to Bay-Banks which would permit charging it with fraud in maintaining its loan reserves, *see Driscoll v. Landmark Bank for Sav.,* 758 F.Supp. 48, 53 (D.Mass.1991), the argument based on prevailing economic conditions must fail.[1]

B. *Industry Practice*

Plaintiffs attempt to found their claim that BayBanks' loan loss reserves were fraudulently understated on the related allegation that BayBanks "grossly deviated from banking industry practice in the New England region." Complaint ¶ 47. The facts giving rise to this allegation are that, while "most other banks, confronting the same deteriorating regional economy as BayBanks, had increased their loan loss reserves as a percentage of nonperforming loans to approximately 70 percent by the Fall of 1989[,].... at the end of the first quarter in 1990, BayBanks' loan loss reserves increased only to about 51 percent of nonperforming loans." *Id.*

This allegation suffers from the same flaw that marred plaintiffs' first argument, namely, a failure to distinguish between business judgment and fraud. *See, e.g., DiLeo,* 901 F.2d at 627; *Shields,* 766 F.Supp. at 38. If the court were to accept as an allegation of fraud the fact that BayBanks kept a loan loss reserve of 51 percent while *most* of its so-called "peer" banks kept their reserves at 70 percent of nonperforming loans, it would allow a dubious business judgment to determine the viability of a securities fraud suit. *See Wilkes,* 767 F.Supp. at 1171. A bank's calculation of its loan loss reserves reflects an internal corporate decision. Congress, through § 10(b), did not attempt to regulate such decisions. *See Santa Fe Indus., Inc. v. Green,* 430 U.S. 462, 479, 97 S.Ct. 1292, 1304, 51 L.Ed.2d 480 (1977) (citation omitted).

As it announced in its 1987 Annual Report, BayBanks decided to base its loan loss reserves more on "the changing nature of our portfolio and its risks," and less on the "analytic norms" in accordance with which other banks based their reserves. Complaint ¶ 20. The alleged fact that most other New England banks had higher reserves than BayBanks, ¶ 47, suggests, perhaps, faulty economic prognostication or a flawed managerial decision. But it does not indicate, for purposes of Rule 9(b), a specific factual basis for a claim of fraud. *See, e.g., Shields,* 766 F.Supp. at 39; *Driscoll,* 758 F.Supp. at 53; *Gollomp v. MNC Fin., Inc.,* 756 F.Supp. 228, 231 (D.Md. 1991). *See also Christidis v. First Pa. Mortgage Trust,* 717 F.2d 96, 100 (3d Cir. 1983).

---

**1.** The complaint here is factually distinguishable from the one that withstood a motion to dismiss in *Nicholas v. Poughkeepsie Savings Bank/FSB,* No. 90 CIV. 1607 (RWS), 1990 WL 145154 (S.D.N.Y. Sept. 27, 1990), on which plaintiffs relied at oral argument. There, the complaint alleged a course of conduct from 1986 to 1989, in which the bank's loan loss reserves were decreased

during a period when the assets and loan portfolios of the Bank more than doubled, and when the Bank was also conducting real estate lending operations outside of ... the

area in which the Bank had traditionally done business. Moreover, the decrease in the Bank's loan loss reserves took place as defendants were engaged in two successive proxy battles that threatened the existence of the Bank as an independent entity.

*Id.* at *6–7. Such circumstances as would permit this court to infer fraud are absent from the present complaint. Rather, this complaint, like those dismissed in *Romani,* 929 F.2d at 880, and *Shields,* 766 F.Supp. at 40, indicates the effects of an economic recession or mismanagement, rather than fraud.

#### C. *Decision to Double Loan Reserves*

BayBanks' announcement, in March 1990, that it would double its loan loss reserves, does not signify that the reserves were intentionally or recklessly understated until then. The precipitous rise of loan loss reserves does not of itself indicate fraud. *See Wilkes,* 767 F.Supp. at 1170–71. *See also DiLeo,* 901 F.2d at 626 (dismissing claim alleging that bank "did not increase its reserves fast enough"); *Dubowski v. Dominion Bankshares Corp.,* 763 F.Supp. 169, 174 (W.D.Va.1991) ("The Court will not speculate that defendants defrauded these investors just because [the bank] suffered more losses than predicted.").

#### D. *Lending Policies*

■ Plaintiffs assert, finally, that, despite its announcement that it maintained a "careful" and "conservative" lending practice, BayBanks disregarded its loan policies. Complaint ¶¶ 27, 28, 47(b). As evidence, plaintiffs cite two transactions involving condominium developers. ¶ 47(b). In one, BayBanks loaned a developer an additional $3.5 million for a project and extended the maturity date of two outstanding loans totaling $15 million. In the second transaction, BayBanks loaned a developer an additional $1 million and extended other loans, all of which together amounted to $4.85 million. *Id.* Plaintiffs do not, however, allege facts that would show that these two transactions were unduly risky, or that defendants were aware of problems with these particular loans, such as inadequate collateral or guarantees. *See, e.g., Kunze v. First Chicago Corp.,* 769 F.Supp. 1444, 1454 (N.D.Ill. 1991). Rather, they wish the court to infer that these loans were "rolled over" so as to appear as performing "when, in fact, the[ir] repayment ... was seriously in doubt." Complaint ¶ 47(b)(1).

This court refuses to draw, from these two transactions, the inference that Bay-Banks fraudulently disregarded its loan policies. *See Kunze,* 769 F.Supp. at 1454.

---

**2.** Because the allegations against the individual defendants are based on the same facts and circumstances as form the basis of the complaint against BayBanks, the insufficiency of the allegations against the latter renders the claims

Absent from the complaint are the detailed allegations of numerous transactions, violative of good banking practice, that have been found to support an inference of fraud. *See, e.g., Hurley v. Federal Deposit Ins. Corp.,* 719 F.Supp. 27, 31 (D.Mass. 1989). Nor is there any other "factual support for plaintiff[s'] hypothetical tale of deception," *Romani,* 929 F.2d at 880, such as the figures at which BayBanks should have valued these projects. Plaintiffs' allegations amount only to speculation as to fraud. Rule 9(b) requires more. *See id.; Wayne Inv., Inc. v. Gulf Oil Corp.,* 739 F.2d 11, 14 (1st Cir.1984); *Shields,* 766 F.Supp. at 40.[2]

An order will issue.

### ORDER

For the reasons stated in the accompanying Memorandum, Defendants' Motion to Dismiss the Amended Complaint is hereby ALLOWED.

---

against the individuals likewise insufficient. *See Driscoll,* 758 F.Supp. at 54 n. 6; *Haft v. Eastland Fin. Corp.,* 755 F.Supp. 1123, 1133–34 (D.R.I.1991).